# United States Court of Appeals

## For the First Circuit

No. 10-2413

NEFTALÍ SOTO-PADRÓ,

Plaintiff, Appellant,

v.

PUBLIC BUILDINGS AUTHORITY; JAVIER SOTO-CARDONA, in his official and personal capacities; LEILA HERNÁNDEZ-UMPIERRE, in her official and personal capacities; ADRIÁN ACEVEDO-RIVERA, in his official and personal capacities; RUDY MARTÍNEZ-CALDERÓN, in his official and personal capacities; FABIO BARRETO-MARTÍNEZ, in his official and personal capacities; JOSÉ GIRONA-MARQUEZ, in his official and personal capacities; MIGUEL DÁVILA-SÁNCHEZ, in his official and personal capacities,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Thompson, Circuit Judges.

Raúl Barrera Morales for the appellant.
Edgardo Colón-Arrarás and Goldman Antonetti & Córdova for the appellee Puerto Rico Public Buildings Authority and for the individual appellees in their official capacities.
Irene S. Soroeta-Kodesh, Solicitor General, Department of Justice, Leticia Casalduc-Rabell, Acting Deputy Solicitor General, Zaira Z. Girón-Anadón, Acting Deputy Solicitor General, and Susana I. Peñagarícano-Brown, Assistant Solicitor General, for the individual appellees in their personal capacities.

March 12, 2012

**THOMPSON**, <u>Circuit Judge</u>.

## FOREWORD

Our story concerns a dispute that arose after Puerto Rico's Public Buildings Authority (PBA) restructured its organization in the late 2000s.[1] We start, naturally, with the facts. And because the case is here on summary judgment, we present them in the light most flattering to Neftalí Soto-Padró, the summary-judgment loser, consistent with record support. <u>See</u>, e.g., <u>Rodríguez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011). Spoiler alert: when all is said and done, we affirm the district judge's rulings across the board.

## THE REORGANIZATION

For the uninitiated, the PBA is a commonwealth-created public corporation whose central mission is preparing plans for and meeting the maintenance needs of "physical facilities related to government services," and whose seven-member governing board includes four persons appointed by Puerto Rico's Governor. <u>See</u> P.R. Laws Ann. tit. 22, §§ 902-04, 906. The board approved the reorganization that has caused this dust-up – a reorganization that

---

[1] The PBA's name is spelled "Public Building Authority" and "Public Building<u>s</u> Authority" in various parts of the record. (Emphasis added.) We use the spelling employed by the PBA. And while we are on the subject of spelling, the parties also spell the names of the persons involved here differently in different places – sometimes using hyphens, sometimes not; sometimes using accent marks, sometimes not. We have done our best to get the names right, and the parties have our apologies if we have gotten any wrong.

eliminated some PBA positions and created new ones too. Out went Field-Operations-Supervisor positions, for example, and in came Field-Operations-Manager and Technical-Services-Supervisor posts.

Soto-Padró is a member of the New Progressive Party (NPP), one of Puerto Rico's two main political parties. The other is the Popular Democratic Party (PDP). At some point in the restructuring process, he went from being a Field Operations Supervisor to a Technical Services Supervisor. According to the summary-judgment evidence, here is how that happened.

After the PBA cut the Field Operations Supervisor positions as part of the reorganization, Soto-Padró applied for three PBA jobs: Auxiliary Regional Director, Field Operations Manager, and Technical Services Supervisor. A trio of PBA officials – Conservation Area Director Fabio Barreto Martínez, Special Assistant to the Executive Director Miguel Dávila-Sánchez, and Executive Sub-Director José Girona-Márquez – interviewed him for the latter two positions. Human Resources and Labor Relations Manager Rudy Martínez-Calderón also sat in on the interviews. Everyone except Soto-Padró was a PDP sympathizer.

The Field-Operations-Manager job went to Adrián Acevedo-Rivera, a PDP sympathizer and former Field Operations Supervisor. Another PDP sympathizer, PBA Executive Director Leila Hernández-Umpierre, wrote Soto-Padró that he had landed the Technical-Services-Supervisor position instead. But despite being offered a

job that he had applied for, Soto-Padró soon had a change of heart. He realized that the switch from Field Operations Supervisor to Technical Services Supervisor would lower the range of <u>possible</u> pay-raise options, though it would not affect his <u>immediate</u> salary. And he learned from talking with PBA Regional Director Javier Soto-Cardona, a PDP activist, that he would have new duties: supervising lower-ranked personnel than he had before and handling plumbing and refrigeration issues, not electrical matters like he was used to (Soto-Padró has a bachelor's degree in electrical engineering), though he concedes that plumbing and refrigeration are critical aspects of PBA operations. So Soto-Padró balked at the switch, writing Hernández-Umpierre that he considered it a "demotion" since it would lower his "pay scale" and lessen his "functions." Martínez-Calderón responded, telling Soto-Padró that he would "continue" as Field Operations Supervisor. But eight months later, Hernández-Umpierre fired off another letter to Soto-Padró, this time saying that he had been doing the duties of a Technical Services Supervisor for the past "few months" or so anyway and that the PBA was reclassifying his position to Technical Services Supervisor.

Soto-Padró was hardly the only PBA staffer affected by the reshuffling. And though executed by PBA personnel affiliated with the PDP, the reorganization impacted workers in both political camps, as we shall see shortly.

**THE LAWSUIT**

Invoking federal civil-rights statutes, 42 U.S.C. §§ 1983, 1985, and 1988, as well as the federal declaratory-judgment act, 28 U.S.C. § 2201, Soto-Padró sued everyone in sight: the PBA, Soto-Cardona, Hernández-Umpierre, Acevedo-Rivera, Martínez-Calderón, Barreto-Martínez, Girona-Márquez, and Dávila-Sánchez. According to Soto-Padró, the defendants had demoted him because he was affiliated with the wrong political party (the NPP rather than the PDP), violating his First-Amendment and due-process rights. His complaint included supplemental local-law claims too. He sued the individual defendants in both their official and personal capacities. And he asked for an amalgam of relief. For openers, he requested a mix of injunctive and declaratory relief. Paraphrasing his complaint, he writes in his brief that he asked the court to declare his reclassification to Technical Services Supervisor "null and void" and to order the PBA to place him in the Field-Operations-Manager position.[2] He also asked the court for damages and attorney fees, among other things.[3]

---

[2] His complaint also asked the court to declare the <u>entire</u> reorganization "null and void" under the PBA's personnel regulations "and other state personnel laws." But we see nothing approaching an adequately developed argument on that point here, so it is waived. <u>See</u> <u>Negrón-Almeda</u> v. <u>Santiago</u>, 528 F.3d 15, 25 (1st Cir. 2008); <u>see</u> <u>also</u> <u>Rodríguez</u>, 659 F.3d at 175-76 (discussing some of our dos and don'ts for presenting an argument on appeal).

[3] For an excellent primer on what relief is available against persons sued in their official or personal capacities, see <u>Martinez-Vélez</u> v. <u>Rey-Hernández</u>, 506 F.3d 32, 39 (1st Cir. 2007).

-5-

We step back for a moment to gain some perspective. A claim for relief under section 1983 requires a showing of two elements – first, that the plaintiff was deprived of either a federal constitutional or statutory right, and, second, that the deprivation was carried out by a defendant acting under color of state law.[4] See, e.g., Barrios-Velázquez v. Asociación de Empleados del Estado Libre Asociado de P.R., 84 F.3d 487, 491 (1st Cir. 1996). And section 1988 allows a "prevailing party" in a section 1983 action "reasonable" attorney fees. 42 U.S.C. § 1988(b). Section 1985 permits suits against those who conspire to deprive others "of the equal protection of the laws, or of the equal privileges and immunities under the law . . . ." 42 U.S.C. § 1985(3). The elements of a section 1985 claim are straightforward: (1) "a conspiracy," (2) "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws," (3) "an overt act in furtherance of the conspiracy," and, lastly, (4) either (a) an "injury to person or property" or (b) "a deprivation of a constitutionally protected right." Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). A section 1985 claim "requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

---

[4] In the district court, the parties and the judge assumed that that requirement was met here, and the parties make that same assumption in their briefs to us. We will too. See Davila-Lopes v. Zapata, 111 F.3d 192, 193 (1st Cir. 1997) (taking that tack in a similar situation).

action,'" id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)), though we have held, in the not-too-distant past, that this statute offers "no remedy" for discrimination based on political affiliation, id. at 109. Soto-Padró makes no effort to explain how his case comes within section 1985's sweep, so the claim is waived. See, e.g., Rodríguez, 659 F.3d at 175-76.

**THE RULINGS**

About a year after he filed suit, Soto-Padró became a PBA Regional Director – a position he still holds, the parties tell us, and likes very much, not only because he got a nice salary bump but also because none of the individual defendants have any supervisory authority over him. In any event, the district judge later granted the defendants summary judgment. Stripped to essentials, his reasoning ran this way: The PBA's enabling legislation describes the PBA's mission as fulfilling an "essential" government function, see P.R. Laws Ann. tit. 22, § 902, but the judge concluded that the PBA is not an "arm of the state," so it is not protected by the Eleventh Amendment.[5] Moving on, the judge held that the summary-judgment record compels the conclusion that the defendants would have taken the same employment action against Soto-Padró even if he were a PDPer, which defeated his political-discrimination claim. Also, the only differences between Field Operations Supervisor and

---

[5] Because no one challenges that aspect of the judge's decision, we say no more about that subject.

-7-

Technical Services Supervisor, the judge stressed after surveying the summary-judgment material, were, first, the duties performed, and, second, the salary scale. And neither change, he quickly added, worked a loss of a constitutional property interest. Consequently, Soto-Padró's due-process theories failed too. The judge also jettisoned all prayers for declaratory and injunctive relief as moot or unripe (why he did that does not really matter in this appeal, for reasons that we get to later), and he dismissed the local-law claims without prejudice. Soto-Padró later filed a motion under Fed. R. Civ. P. 59(e), asking the judge to reconsider, but the judge denied the motion.

## THE APPEAL

Needless to say, Soto-Padró disagrees with parts of the judge's rulings. He appeals. But his arguments do not persuade.

### (A)
### Summary Judgment

We give de novo review to the judge's summary-judgment decision, drawing all reasonable factual inferences in favor of Soto-Padró, see, e.g., Rodríguez, 659 F.3d at 175, and affirming if the record reveals no genuine dispute of material fact and discloses the defendants' entitlement to judgment as a matter of law, see Fed. R. Civ. P. 56(a). Soto-Padró must come forward with evidence sufficient for "a fair-minded jury [to] return a verdict" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "[C]onclusory allegations, improbable inferences, and

unsupported speculation" will not do.  <u>Medina-Munoz</u> v. <u>R.J.</u> <u>Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).  And we may uphold the summary judgment for any reason supported by the record, even if not relied on by the judge.  <u>See</u>, <u>e.g.</u>, <u>Alliance of Auto.</u> <u>Mfrs.</u> v. <u>Gwadosky</u>, 430 F.3d 30, 34 (1st Cir. 2005).

With these lessons in mind, we turn to the summary-judgment issues before us, filling in some missing details as we move along.

## (1)
## Political Discrimination

Soto-Padró remains adamant: the defendants "demoted" him because of his NPP status.[6]  But even if a jury could reasonably conclude from the summary-judgment evidence that his political affiliation was a substantial or motivating factor in their decisional calculus, he still would not be home free.  The defendants could still meet their summary-judgment burden by showing that no sensible jury would reject their defense that they would have taken the same action against him "in the absence of the protected conduct."  <u>See</u>, <u>e.g.</u>, <u>Díaz-Bigio</u> v. <u>Santini</u>, 652 F.3d 45, 52 (1st Cir. 2011) (internal quotation marks omitted) (discussing <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u> v. <u>Doyle</u>, 429 U.S. 274 (1977)); <u>Costa-Urena</u> v. <u>Segarra</u>, 590 F.3d 18, 25 (1st Cir. 2009) (same).  This is what is known as a <u>Mt. Healthy</u> defense, <u>see</u>

_____

[6] We use Soto-Padró's language but do not rule on whether he was actually "demoted" in any actionable sense.

-9-

Rodríquez, 659 F.3d at 176; Martinez-Vélez, 506 F.3d at 39, and the judge rightly granted the defendants summary judgment based on that defense.  We explain.

With the blessing of its governing board, the PBA restyled its operations – consolidating or modifying some positions, wiping out others, and creating new ones – to help things run more smoothly there.  Efficiency was the PBA's watchword.  At least that is what the summary-judgment record shows.  The restructuring was entity-wide – in other words, it was not one that was targeted exclusively at Soto-Padró's particular corner of the PBA.  And it focused on positions not persons.

But obviously a reshuffling of positions affects people, and the people affected included NPP and PDP sympathizers:  NPPers and PDPers got promoted, and, as PBA Regional Director Soto-Cardona stressed, PDPers got demoted – all as a result of the board-approved restructuring.  As an example, Soto-Cardona singled out José Vargas – a PDP member who was demoted from Field Operations Supervisor on account of the shake-up, just like NPP-member Soto-Padró claims he himself was.  Samuel Valentín-Vega, a PBA Maintenance Supervisor, backed up Soto-Cardona's testimony on Vargas's demotion.

Critically, our case is 180 degrees different in very relevant respects from cases that deemed a Mt. Healthy defense deficient – cases like Rodriquez-Rios v. Cordero, 138 F.3d 22, 25

-10-

(1st Cir. 1998), where we held that even if the public-corporation officials there had demoted an employee under a "reorganization" plan, their real motives "remained very much in question," given that the governing board had not "approved" that plan, as it had earlier ones; Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 78 (1st Cir. 2000), where we noted that the "restructuring" there had scrapped one job but not others; or Jirau-Bernal v. Agrait, 37 F.3d 1, 3 (1st Cir. 1994), and Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 40 (1st Cir. 1993), where we stressed that every single one of the employees demoted under the "reorganization" schemes there was a supporter of the political party that opposed the party in power. Even at the risk of testing the reader's patience, we repeat that the summary-judgment submissions here show that the PBA's governing board had green-lighted the entity-wide restructuring plan – a plan implemented by PDPers, certainly, but one that affected NPPers and PDPers alike, including a PDP-sympathizer employee (Vargas) who was demoted from Field Operations Supervisor, just like NPP-member Soto-Padró claims he himself was.

The Supreme Court has described the Mt. Healthy defense this way: it deals with employment actions driven by "mixed motives," and provides that where there are both "lawful" and "unlawful" reasons for the adverse employment action, "if the lawful reason alone would have sufficed to justify the [action]," then the employee cannot prevail. McKennon v. Nashville Banner

-11-

<u>Pub. Co.</u>, 513 U.S. 352, 359 (1995).  And in the context of a case like this, we have said that even if a plaintiff shows an impermissible political motive, he cannot win if the employer shows that it would have taken the same action anyway, say, as part of a bona fide reorganization.  <u>Nereida-Gonzalez</u> v. <u>Tirado-Delgado</u>, 990 F.2d 701, 706 n.4 (1st 1993).  That is our situation here:  the record, properly viewed (<u>i.e.,</u> afresh and in the light most generous to Soto-Padró), shows that the defendants still would have reclassified Soto-Padró's position even if he were a PDP member or sympathizer, which means that they have sufficiently established a <u>Mt. Healthy</u> defense.

Soto-Padró's several attempts to cast doubt on this fail. Take, for example, his claim that Valentín-Vega, as a PBA Maintenance Supervisor, had zero personal knowledge of either PBA personnel matters or the reorganization plan.[7]  But Valentín-Vega's deposition testimony – given in response to a lawyer's directing him to testify about matters only within his "personal knowledge" on this point – cuts the legs out from under Soto-Padró's lead argument.  And Soto-Padró points to no evidence contradicting this.

Still focusing on Vargas's demotion, Soto-Padró thinks that he has a trump card.  Comparing him with Vargas is like comparing apples and oranges, he writes, because Vargas was not a

---

[7]  Remember that Valentín-Vega had seconded Soto-Cardona's testimony on Vargas's demotion.

demotee.  True, PBA Auxiliary Regional Director Gerardo García said in his deposition that Vargas "was not demoted."  (Emphasis added.) García stressed that Vargas told him that after the PBA eliminated the Field-Operations-Supervisor posts, he (Vargas) applied for the newly-created position of Field Operations Manager.  Not having the right credentials for that job, Vargas ended up as a Supervisor instead, which, apparently, was a better fit – at least that is what García said Vargas said.  Given these circumstances, comparing Soto-Padró's situation with Vargas's does not cut it, or so Soto-Padró insists.

This argument is not a winner either.  For one thing, García's testimony about what Vargas said smacks of hearsay (Soto-Padró points us to no applicable hearsay-rule exception), and hearsay evidence of this sort cannot defeat summary judgment.  See, e.g., Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 17 (1st Cir. 2007).  For another thing, García conceded during his deposition that Vargas went from a higher-ranked position (Field Operations Supervisor) to a lower-ranked one (Supervisor) – the classic definition of a demotion, see Black's Law Dictionary 497 (9th ed. 2009) – as a direct result of the reorganization.  It follows, then, as surely as summer follows spring, that García's testimony is not enough to create a genuine dispute of material fact regarding Vargas's demotion – for a plaintiff cannot meet that standard by pouncing on comments made by

-13-

a deponent that the deponent himself has undercut with his later testimony.  See Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 39 n.2 (1st Cir. 1999).

Soto-Padró also tosses around words like "arbitrary" and "sham" to describe his reclassification in the hope of discrediting the defendants' Mt. Healthy defense.  The poster child for this campaign is his claim that the PBA did not follow certain hiring procedures in naming PDP sympathizer Acevedo-Rivera Field Operations Manager, even though Acevedo-Rivera was "less qualified" than he.  And to bolster his theory, Soto-Padró relies on an "expert report" prepared by a human-resources consultant that accused the PBA of not adhering to some of its hiring protocols. None of this helps his cause, however.  For starters, he never established that the supposedly less-qualified Acevedo-Rivera was not qualified for the Field-Operations-Manager job.  Also, and importantly, the expert's report does not suggest that the defendants would have reached a different reclassification decision regarding Soto-Padró if he had been a PDP rather than an NPP member.

That ends this phase of our analysis. Given this record, the judge properly granted summary judgment to the defendants on Soto-Padró's political-discrimination claim.  So we soldier on.

Convinced that the reclassification infracted his substantive and procedural due-process rights, Soto-Padró faults the judge for holding otherwise. To prevail on either due-process theory, Soto-Padró must point to a protected property interest.[8] See, e.g., Harron v. Town of Franklin, 660 F.3d 531, 536, 537 (1st Cir. 2011); Alvarado-Aguilera v. Negrón, 509 F.3d 50, 53 (1st Cir. 2007); Centro Medico del Turabo, Inc., 406 F.3d at 7-8. The Constitution, of course, does not create property interests – rather they are created elsewhere, usually under local law. See Rodriguez-Pinto, 982 F.2d at 41; Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988); see also Torres-Martínez v. P.R. Dep't of Corr., 485 F.3d 19, 24 (1st Cir. 2007); Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005). And that is where Soto-Padró falters.

The essence of Soto-Padró's argument is that the "sham" reorganization left him in a new position (Technical Services Supervisor) with fewer duties and a smaller pay scale than his old post (Field Operations Supervisor). We see two problems, though: one, Puerto Rico law holds that an employee in Soto-Padró's shoes

---

[8] The Due Process Clause protects liberty interests too, see Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7-8 & n.4 (1st Cir. 2005), but Soto-Padró invokes none. It also protects life, see U.S. Const. amend. XIV, § 1, but obviously that is not a concern here.

-15-

has "a property interest in [his] continued employment, <u>not</u> in the functions [he] perform[s]," <u>Ruiz-Casillas</u>, 415 F.3d at 134 (internal quotation marks omitted and emphasis added); <u>accord</u> <u>Torres-Martínez</u>, 485 F.3d at 24; and, two, Soto-Padró never cites a Puerto Rico source showing that he had a protectable property interest in his old pay scale. The judge had rejected the pay-scale aspect of Soto-Padró's due-process argument, relying on <u>Rodriguez-Pinto</u> v. <u>Tirado-Delgado</u>, 798 F. Supp. 77, 83 (D.P.R. 1992), a case where a different judge in the same court gave thumbs down to a similar argument after concluding that the plaintiff there had not satisfied "his burden of showing" that he had a right to remain in the same salary scale. On appeal we affirmed, sidestepping the constitutional question and deeming the issue "waived" because (among other reasons) the plaintiff did not pinpoint the source of the property right that he was supposedly deprived of, spell out how that right (assuming it exists) was "entitled to constitutional protection," or "cite any legal authority" to bolster his theory. <u>Rodriguez-Pinto</u>, 982 F.2d at 41. Because Soto-Padró's failings basically mirror those in <u>Rodriguez-Pinto</u>, we follow <u>Rodriguez-Pinto</u>'s lead and find his pay-scale argument waived. The net result, then, is that the judge rightly awarded the defendants summary judgment on Soto-Padró's due-process claim as well.

## (3)
## Declaratory and Injunctive Relief

Recall that Soto-Padró's complaint asked for various forms of declaratory and injunctive relief, among other things. His opening brief attacks the reasoning behind the judge's decision not to grant declaratory relief. His reply brief then assails the judge's refusal to grant declaratory _and_ injunctive relief. We do not spend any time on these protests, however.

We can and do dispatch his injunction argument as waived, since appellate arguments debuted in a reply brief are not preserved. See, e.g., Liberty Mut. Ins. Co. v. Nippon Sanso K.K., 331 F.3d 153, 162 (1st Cir. 2003). Another problem dooms _both_ the injunction and the declaratory-judgment arguments, actually: because the judge (as we have said already) correctly tossed the political-discrimination and due-process claims on summary judgment, Soto-Padró has no basis for any relief at all against the defendants, let alone declaratory and injunctive relief. See Lopez v. Garriga, 917 F.2d 63, 70 (1st Cir. 1990) (holding that once "plaintiff's constitutional claim" failed, "he was left without any sound basis for" injunctive or declaratory relief); see also Redondo-Borges v. U.S. Dep't of HUD, 421 F.3d 1, 5, 11 (1st Cir. 2005) (affirming a district-court ruling rejecting an equitable-relief claim because "plaintiffs had failed to state any claim cognizable under section 1983"). Enough said.

## (B)
## Reconsideration

With the summary-judgment issues out of the way, we take up Soto-Padró's protest that the judge botched the reconsideration ruling – a ruling that we review only for abuse of discretion, keeping in mind that judges enjoy "considerable" discretion in this area. See, e.g., Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004). Our cases generally offer three grounds for a valid Rule 59(e) motion: an "intervening change" in the controlling law, a clear legal error, or newly-discovered evidence. See, e.g., Morán Vega v. Cruz Burgos, 537 F.3d 14, 18 (1st Cir. 2008); Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005). And our cases tell us that a party cannot use a Rule 59(e) motion to rehash arguments previously rejected or to raise ones that "could, and should, have been made before judgment issued." See, e.g., Morán Vega, 537 F.3d at 18 n.2 (internal quotation marks omitted); see also Nat'l Metal Finishing Co. v. BarclaysAmerican/Comm., Inc., 899 F.2d 119, 123 (1st Cir. 1990). Given all this, it is exceedingly difficult for a litigant to win a Rule 59(e) motion. See Marie, 402 F.3d at 7 n.2.

Moving from the general to the specific, Soto-Padró does not play up an intervening change of law or newly-discovered evidence. Instead he pins his hopes on persuading us to find a manifest error of law. We see none, however.

Soto-Padró's first argument – that his motion brought to the judge's attention "for the first time" a <u>1979</u> Supreme Court case that supposedly supported his prayer for declaratory relief – goes nowhere fast, given that he could and should have pressed that point sooner. <u>See</u>, <u>e.g.</u>, <u>Morán Vega</u>, 537 F.3d at 18 n.2. His next two arguments – targeting parts of the judge's political-discrimination and due-process analyses - also fail, but this time because they are retreads of ones that the judge had already rejected. <u>See</u>, <u>e.g.</u>, <u>id.</u> And his parting shot – that the judge gaffed the summary-judgment protocol – misses the mark too, since the record undercuts his claim. Obviously, then, Soto-Padró has not come close to showing an abuse of discretion here.

**CONCLUSION**

For the reasons revealed above, we uphold the judge's rulings and judgment.

**<u>Affirmed, with appellate costs to the defendants</u>**.

-19-