# United States Court of Appeals
## For the First Circuit

No. 13-1375

ROBERTO REYES-PÉREZ,

Plaintiff, Appellant,

v.

STATE INSURANCE FUND CORPORATION; ZOIMÉ ÁLVAREZ-RUBIO,
SAÚL RIVERA-RIVERA, MAYRA DOMENECH, JORGE GARCÍA-ORTIZ,
in their individual capacities,

Defendants, Appellees.

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Celina Romany for appellant.
Damaris Ortiz González, with whom Ángel Muñoz-Noya and Sifre
& Muñoz-Noya PSC were on brief, for appellee State Insurance Fund
Corporation.
Susana I. Peñagarícano Brown, with whom Michelle Camacho-
Nieves, Assistance Solicitor General, and Margarita Mercado-
Echegaray, Solicitor General, Department of Justice, were on brief,
for individual capacity appellees.

June 19, 2014

**LYNCH, <u>Chief Judge</u>**.  Plaintiff, attorney Roberto Reyes-Pérez, who had been favored in his public employment with a trust position at Puerto Rico's State Insurance Fund Corporation (SIFC) during the period his political party, the Popular Democratic Party (PDP), was in power, was moved into a career position at the SIFC as it became clear the opposing party might win an upcoming election.  Had he remained in a trust position, the new administration could have removed him without violating the First Amendment.

He worked in his new, career position as Contracting Director for about two years.  During this time, audits were performed by the new administration of a number of categories of employees to see if their employment in fact conformed with Puerto Rican law.  Reyes-Pérez was among those employees whose appointment did not meet the job requirements.  His reclassification to a career position was annulled, and because he had no right to reinstatement, he was dismissed.

The district court found that the <u>Mt. Healthy</u> defense required entry of summary judgment for defendants.  We agree and so affirm.

I.

On de novo review of the grant of a motion for summary judgment, we recite the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor.

-2-

Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 81-82 (1st Cir. 2012).  However, we disregard "allegations of a merely speculative or conclusory nature."  Serra v. Quantum Servicing Corp., 747 F.3d 37, 39-40 (1st Cir. 2014).  We also note that both we and the district court have done our best to pull facts from the record despite frequent violations of the rules and inadequate briefing by Reyes-Pérez.

A.      Background

There are two major political parties in Puerto Rico: the PDP and the New Progressive Party (NPP).  When control of the government changes parties, "[e]ntirely too often, the political party assuming office terminates the employment of public employees who are affiliated with the party going out of power and then fills those vacancies with its own members."  Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 125 (1st Cir. 2004).  Similarly, "the outgoing party attempts to secure the continued tenure of its members in public jobs through a variety of devices, such as reclassifying policy-type appointments as career positions or making appointments in violation of Puerto Rico law."  Id.

Reyes-Pérez is a PDP activist, from a family of well-known, former public figures in that party.  Following his 2001 graduation from law school, he went to work as a legal advisor to PDP member Sila Calderón, then-governor of Puerto Rico.  In March 2005, immediately after working for Calderón, Reyes-Pérez accepted

-3-

a trust position as the Contracting Director of the SIFC. This was his first job with responsibilities in contracting for goods and services.

In February 2008, as part of a larger restructuring of the SIFC under a PDP administration and in advance of a November election, Reyes-Pérez's position was reclassified from a trust to a career position. Reyes-Pérez's position was one of three that were reclassified from trust to career positions during this reorganization.[1]

In the November 2008 elections, the NPP gained control of the executive branch of government in Puerto Rico. In January 2009, Zoimé Álvarez-Rubio, an NPP activist, was appointed as the new SIFC Administrator. On January 14, 2009, with the approval of the SIFC's Board of Directors, Álvarez-Rubio undertook several investigative audits to determine whether her predecessor's reorganization conformed with the new administration's view of local laws.[2]

Álvarez-Rubio ordered a comprehensive audit of all of the SIFC's personnel transactions that took place during 2008. The

---

[1] The other two positions were: "Associate Director of Education and Development" and "Special Assistant I."

[2] Plaintiff attempted to refute the fact of this reorganization, in part by alleging that because plaintiff was not formally informed of the organizational change, it did not take place. We agree with the district court that this attempt to deny the fact of the reorganization fails, and so we do not credit it.

-4-

stated purpose of this investigation was to ensure that all of the relevant personnel actions complied with applicable rules and regulations. In particular, the investigation focused on compliance with the "merit principle," which is mandated by Puerto Rico law, P.R. Laws Ann. tit. 3, § 1461. The merit principle is expressed in various forms in the SIFC Employee Manual, and is intended to ensure open competition for positions at the SIFC.

Saúl Rivera-Rivera, then the Director of the Human Resources Department, headed the investigation. After a review of the 3,835 personnel files of SIFC employees, the investigation concluded that 232 files chronicled personnel transactions that violated Article 14.1 of the Employee Manual. Under Article 14.1, which reflects the merit principle, the SIFC is required to fill available positions through open competition that allows individuals from outside the SIFC to compete for the jobs. The SIFC's internal investigation found that these 232 cases violated Article 14.1 because positions were filled via internal job announcements rather than public postings.

Also in 2009, the SIFC undertook a second evaluation of personnel actions, this time focusing on the three reclassifications -- including plaintiff's -- from trust to career positions.[3] This type of reclassification is governed by Article

_____

[3] This investigation was undertaken in part because there had been various complaints filed before the SIFC's Board of Appeals by SIFC managerial employees protesting these reclassifications.

-5-

9.5 of SIFC's Employee Manual, which states that in order to preserve the merit principle, reclassification of a trust position to a career position is only authorized when there is a change in the position's functions or when there is a change in SIFC's organizational structure. Further, if an <u>occupied</u> position is reclassified, the current holder of that position must meet several requirements, including (1) meeting the established qualification requirements for the position's class; (2) receiving a certification from the Administrator or his authorized representative certifying that the employee's qualifications and services are adequate; and (3) passing (or having passed) the exam required for the position's class. As it is relevant here, the career position of Director of Contracting requires, inter alia, five years of experience in the contracting area.

This audit investigation, which was conducted by an <u>external</u> human resources consultant, José Miguel Álvarez, concluded that all three 2008 reclassifications from trust to career positions, including plaintiff's, violated the merit principle for failing to comply with <u>any</u> of the requirements of Article 9.5. As to the experience requirement, plaintiff's only experience in contracting was during his tenure at the SIFC, which began on March 1, 2005. At the time his position was reclassified in 2008, he plainly did not have the five years of experience that the Employee

Manual required.[4]  As to the other qualifications, Álvarez's Audit Report found that plaintiff's personnel file contained no evidence that he had received the required certification from the Administrator,[5] nor that he had taken or passed the required exam.

The Audit Report recommended annulling each of the three reclassifications for failure to comply in any way with Article 9.5.  Following Administrator Álvarez-Rubio's approval of the Audit Report's recommendations, the SIFC's human resources department began notifying those who would be affected.  To this end, on March 26, 2010, plaintiff received a letter notifying him of Álvarez-

----

[4]  Plaintiff initially attempted to argue that he had previously provided legal advice in matters relating to the contracting of goods and services to Pediatrix Medical Group following his graduation from law school in 2001.  However, both plaintiff and Pediatrix's representative ultimately admitted that plaintiff was never officially employed in that capacity, and that any legal advice provided was given in an unofficial capacity during family reunions and other social events, since Pediatrix's president was plaintiff's uncle.

[5]  Plaintiff relies heavily on an August 29, 2008 letter signed by former Administrator Carlos Ruiz Nazario and former head of human resources Louis A. Villahermosa that stated that plaintiff met all the position requirements, in addition to complying with Article 9.5 of the SIFC Employees Manual.  This reliance is misplaced.  Even if we were to credit plaintiff's assertion that this letter met the certification requirement of Article 9.5, the letter cannot undermine defendants' showing that plaintiff in fact did not possess the required five years of experience.
Plaintiff's argument that his substantive qualifications are disputed issues of fact because there were certain documents missing from his personnel file fails for largely the same reason.  As the district court correctly observed, "[t]he fact that a piece of paper is missing from a file does not controvert Defendants' statement that Plaintiff lacked the requisite experience for the position." Reyes-Perez v. State Ins. Fund, No. 11-1070, 2012 WL 4863714, at *6 n.11 (D.P.R. Oct. 12, 2012).

Rubio's intent to nullify the 2008 reclassification and to return the Contracting Director role to a trust position. The letter further explained that because plaintiff had held what was properly characterized as a trust (rather than a career) position, he had no right to reinstatement.

Plaintiff requested and received an administrative hearing to contest this determination. In late April 2010, the Official Examiner agreed with the SIFC's determination that the 2008 reclassification violated the merit principle, and accordingly agreed that the nullification of that reclassification was proper. Álvarez-Rubio adopted this finding, and notified Reyes-Pérez of this conclusion in a letter dated April 30, 2010. Because he had no right to reinstatement, plaintiff was dismissed from his position.[6] The letter from Álvarez-Rubio informed plaintiff of his right to appeal this outcome to the SIFC Board of Appeals. He did not appeal.

B.        Procedural History

On January 21, 2011, Reyes-Pérez filed this suit in the District of Puerto Rico against SIFC and several defendants in their individual and official capacities, alleging that he was

_____

[6]    Following the nullification, the position of Contract Director was returned to its original classification as a trust position.

-8-

terminated from his position at SIFC because of his political association in violation of the First and Fourteenth Amendments.[7]

The defendants moved for summary judgment, arguing that there was no evidence in the record that supported a prima facie case of political discrimination, and that even if plaintiff could make a prima facie showing, his claim fails under the Mt. Healthy doctrine. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

The district court assumed arguendo that plaintiff made a prima facie showing of political discrimination, but concluded that defendants were entitled to summary judgment on the basis of their Mt. Healthy defense in any event.[8] Reyes-Perez v. State Ins. Fund, No. 11-1070, 2012 WL 4863714, at *5 (D.P.R. Oct. 12, 2012). Plaintiff then filed a motion for reconsideration, arguing that the

---

[7] Reyes-Pérez also alleged a due process claim, along with several pendent state law claims under Puerto Rico law. The district court granted the defendants' summary judgment motion as to those claims, and plaintiff does not renew them on appeal.

[8] The district court repeatedly voiced its frustration with plaintiff's "fail[ure] to comply with the applicable rules governing summary judgment practice in this district." Reyes-Perez, 2012 WL 4863714, at *1; see also id. at *1 n.1, *3 n.4, *4 n.10, *6 n.11. In several instances, the plaintiff's failure to properly controvert defendants' factual assertions led the district court to deem certain of defendants' supported statements admitted. District courts have broad latitude to enforce local rules, and we see no abuse of discretion in the court's actions here. See Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994). Nor will we reward the plaintiff's failure to comply with summary judgment rules in the district court by taking the different view of the record plaintiff suggests here.

district court had committed clear legal error.  The district court summarily denied that motion, <u>Reyes-Perez</u> v. <u>State Ins. Fund</u>, No. 11-1070, 2013 WL 607918 (D.P.R. Feb. 19, 2013), and plaintiff now appeals.

## II.

"It is axiomatic that 'the First Amendment protects non-policymaking public employees from adverse employment actions based on their political affiliation or opinion.'"  <u>Vélez-Rivera</u> v. <u>Agosto-Alicea</u>, 437 F.3d 145, 152 (1st Cir. 2006) (quoting <u>González-Piña</u> v. <u>Rodríguez</u>, 407 F.3d 425, 431 (1st Cir. 2005)).  We evaluate political discrimination claims using a burden-shifting approach.

First, the plaintiff must show that his political affiliation was a "substantial or motivating factor" in the adverse employment decision.  <u>Padilla-García</u> v. <u>Guillermo Rodriquez</u>, 212 F.3d 69, 74 (1st Cir. 2000).  Once made, the defendant may then rebut that showing with what is commonly referred to as the <u>Mt. Healthy</u> defense: "by proving by a preponderance of the evidence that the governmental agency would have taken the same action against the employee even in the absence of the protected conduct." <u>Díaz-Bigio</u> v. <u>Santini</u>, 652 F.3d 45, 52 (1st Cir. 2011) (quoting <u>Guilloty Perez</u> v. <u>Pierluisi</u>, 339 F.3d 43, 51 (1st Cir. 2003)) (internal quotation marks omitted).  The <u>Mt. Healthy</u> defense is rooted in causation; even after plaintiff makes a prima facie case, it is "insufficient to establish discrimination as a matter of law

-10-

because the plaintiff's case at that point does not 'distinguish[] between a result caused by a constitutional violation and one not so caused.'" Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir. 2004) (alteration in original) (quoting Mt. Healthy, 429 U.S. at 286).

We assume dubitante that plaintiff has set forth an adequate prima facie case. We proceed to defendants' Mt. Healthy defense, and conclude that they are entitled to summary judgment on that basis.

First, plaintiff plainly lacked the required years of experience in the contracting sector for the career position of Contracting Director. His attempts to argue to the contrary fall flat: at the time the reclassification of his position occurred, the record is clear that he had not been employed there for five years, and that was his first formal employment experience working in contracting. Chats about contracting at family barbeques with his uncle do not fill the gap. On that basis alone, plaintiff's elevation to a career position was plainly in violation of Puerto Rico's merit principle, as expressed in Article 9.5 of the Employee Manual. Cf. Sanchez-Lopez, 375 F.3d at 132 (describing "illegality of [an] appointment" as a "neutral basis" on which to base an employment action).

We have said that "simply showing that an appointment was illegal under local law does not suffice to meet defendants' Mt.

Healthy burden," id. at 133, so our inquiry continues. Here, defendants put forward sufficient other evidence to show that regardless of plaintiff's political affiliation, they would have reclassified his Contracting Director position and would have done so for a legitimate reason. That is sufficient to establish a Mt. Healthy defense. See Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 6 (1st Cir. 2012).

The larger reversion of the SIFC's organizational structure to its 2005 status was not spearheaded by Administrator Álvarez-Rubio acting independently. Rather, it was approved by the SIFC's Board of Directors. See id. (affirming grant of summary judgment in favor of defendants in a political discrimination case where a government entity's governing board had "greenlighted the entity-wide restructuring plan").

Additionally, the accompanying audit of the SIFC was "not one that was targeted exclusively at [plaintiff's] particular corner" of the organization, id., but rather was an entity-wide investigation that included the review of well over 3,000 employment files to ensure compliance with the merit principle. There is no evidence that this entity-wide audit targeted individuals from a particular party. See Sanchez-Lopez, 375 F.3d at 132.

Both audits were geared toward "positions[,] not persons." Soto-Padró, 675 F.3d at 6. The second investigation was

targeted at all three of the positions that had been reclassified from trust to career positions in 2008. At the close of his investigation, Álvarez, the external consultant, provided the SIFC Administrator with a detailed report as to each position's lack of compliance with Article 9.5, and likewise recommended that all three position reclassifications be annulled. Plaintiff has not proffered any evidence from which an inference can be drawn that the Audit Report's findings were based on political considerations, or that there was differential treatment of the individuals that held the other two improperly reclassified positions.

The record is quite clear that during 2009, the SIFC underwent a comprehensive organizational restructuring, which included the identification and correction of various employment-related transactions that violated Puerto Rico's merit principle.

If the defendant succeeds in carrying its burden of persuasion as to its Mt. Healthy defense, the plaintiff may then "discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-García, 212 F.3d at 77. Here, plaintiff has failed to produce any evidence that undermines defendants' proffered nondiscriminatory reasons for his reclassification and later termination. See Cepero-Rivera v. Fagundo, 414 F.3d 124, 133 (1st Cir. 2005). Defendants' Mt. Healthy defense ends the matter.

-13-

III.

The district court's grant of summary judgment in favor of the defendants is <u>affirmed</u>.