**MARITIME PRESERVATION LTD, Plaintiff,**

v.

**BLACK HAWK SHIPPING ENTERPRISES, INC., et al., Defendants.**

**Civil No. 13–1728 (SEC)**

United States District Court, D. Puerto Rico.

Signed 04/19/2016

Alberto J. Castaner–Padro, III, Castaner Law Offices P.S.C., Guaynabo, PR, for Plaintiff.

Manuel Sosa–Baez, Saldana, Carvajal & Velez–Rive, PSC., San Juan, PR, for Defendants.

## OPINION & ORDER

SALVADOR E. CASELLAS, United States Senior District Judge

Defendant Black Hawk Shipping Enterprises (Black Hawk) is the owner and operator of the M/V V.I. Pride, a 646 ton cargo ship registered in Honduras, which it uses for maritime trade within the Caribbean. Late in 2011, Black Hawk contracted the services of Plaintiff Maritime Preservation LTD (Maritime), a ship repair and dry dock company located in

Trinidad and Tobago, for the repair and maintenance of its vessel. Maritime charged Black Hawk around $700,000 for this work. While Black Hawk made several payments towards the satisfaction of this debt, about $120,000 remained due and payable. Because Black Hawk did not respond to Maritime's requests for satisfaction of the outstanding amount, Maritime filed a collection action in Trinidad and Tobago (T & T), and ultimately secured a default judgment against Black Hawk.

In this *exequatur* action, Maritime seeks to enforce the judgment obtained in T & T and collect on Black Hawk's debt. Maritime further seeks a declaratory judgment holding Black Hawk's officer, Rosalie Tarbox, personally liable for the corporation's debt. Pending before the Court is Maritime's motion for summary judgment on both grounds. For the reasons that follow, Maritime's motion is **GRANTED** as to the request for *exequatur*, and **DENIED** as to the declaratory judgment. Judgment shall follow accordingly.

## I. Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). It is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994), and must construe the record in the "light most flattering" to the nonmovant. Soto–Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

At the summary judgment stage, if the movant bears the ultimate burden of proof at trial, that party must initially "submit materials of evidentiary or quasi-evidentiary quality" in support of its position. In re Varrasso, 37 F.3d 760, 763 (1st Cir. 1994). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56€; Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).

## II. Analysis

a. Whether the Court should recognize the validity of the judgment issued by the T & T courts and allow the same to be executed in Puerto Rico.

Foreign judgments do not operate *ex propio vigore* in Puerto Rico. Rather, they must first be validated and recognized by the courts of this jurisdiction through the *exequatur* proceeding governed by Rule 55 of the Puerto Rico Rules of Civil Procedure. Under Rule 55.5(b), the Court may recognize foreign judgments only if:

1. the judgment was issued by a court with personal and subject-matter jurisdiction;

2. the judgment was rendered by a competent court;

3. the court in question observed the due process of law;

4. the legal system in which the judgment is rendered is known for its impartiality and the absence of prejudice against foreigners;

5. the judgment is not contrary to public order;

6. the judgment is not contrary to basic principles of justice; and

7. the judgment was not obtained by fraudulent means.

See Puerto Rico Rule of Civil Procedure 55(b)(1)–(7), P.R. Laws Ann. t. 32 Ap. V, R. 55(b)(1)–(7).

As a threshold matter, the Court notes that Black Hawk only opposes Maritime's arguments on the first and fourth factors. The Court shall therefore focus its attention on those matters first.

### i. Personal Jurisdiction

■ Maritime first posits that T & T had personal jurisdiction by virtue of Black Hawk's decision to seek boat repairs in that forum, and because the related repair contract expressly provided that T & T law would govern the parties' relationship. See Docket # 29 at ¶ 4. Black Hawk responds that personal jurisdiction was lacking because Maritime failed to serve process pursuant to the Hague convention. In the alternative, it argues that T & T courts lacked personal jurisdiction because Maritime failed to serve process upon Black Hawk "through the mechanism of letter rogatory sent to the proper authorities in [Puerto Rico]." Docket # 35 at 9.

The Court is not swayed by either counterargument. The first—that service of process did not comply with the procedures contained in the Hague convention—is easily dismissed since T & T is not bound by the requirements of the Hague Convention on international service of process.[1] While the second cannot be dispatched so quickly, it must be dispatched as well. Black Hawk's contention that Maritime did not employ the "letters rogatory"

mechanism is, at bottom, a claim that service of process under Puerto Rico law was deficient. But, in an *exequatur* proceeding, it is irrelevant "whether the original judgment was issued by a court that would have had personal jurisdiction <u>consistent with the laws of Puerto Rico</u>." Brightpoint N. Am. L.P. v. Acosta, Civ. No. 09–1500 (JAF), 2010 WL 891635, at *5 (D.P.R. Mar. 8, 2010) (citing Roseberry v. Registrar, 14 P.R. Offic. Trans. 958, 964, 114 D.P.R. 743 (1983)) (emphasis added). Instead, the question is whether personal jurisdiction existed <u>under T & T law</u> and was properly exercised within the limits allowed by the U.S. Constitution. Both conditions are met here.

The first inquiry brings the Court to Part 7 of the Civil Proceedings Rules of T & T, which governs the procedure through which process may be served outside of the jurisdiction. See Exhibit 1–20. Under T & T law, a claim form—the T & T equivalent to a complaint—may be served outside the jurisdiction only with leave of court. Service of process may be completed through a variety of methods. Id. at Rules 7.2 & 7.8. One of options is set forth in Rule 5.12, which allows service to be completed by a "method specified in the court's order."

The record shows that Maritime filed its collection action in T & T on October 3, 2012. See Docket 29 at ¶ 7. On the same date, Maritime sought leave to serve process via certified mail. Id. at ¶ 8.[2] The T &

---

1. Although T & T is not a member of the Hague Conference on Private International Law, it has nevertheless bound itself to the Hague Convention of 5 October 1961, which abolished the requirement of legalization for foreign public documents, and to the Hague Convention of October 25, 1980, which relates to international child abduction. But T & T has not bound itself to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, more commonly called the Hague Ser-

vice Convention, which is the one Black Hawk ostensibly relies on here.

2. Black Hawk attempts to dispute the authenticity of these documents by noting that "some of the applications and/or documents in which plaintiff relies have blank spaces, inconsistent stamps and crossed-out words." See Docket # 34 at 3, ¶ 9. However, Black Hawk does not discuss whether those deficiencies are, in fact, material to the authenticity of the document. This undeveloped challenge thus fails.

T court granted this request, and Maritime sent the required documents to Black Hawk via international courier. See Docket 29 at ¶ 8–10. It is undisputed that Black Hawk received these documents. As a result, the Court finds that Black Hawk was properly served with process under T & T law.[3]

The next inquiry centers on whether the exercise of jurisdiction over Black Hawk was proper under the U.S. Constitution. The general rule is that a court may exercise authority over a defendant only where there is general or specific jurisdiction over the person. See Donatelli v. National Hockey League, 893 F.2d 459, 462–63 (1st Cir. 1990). Here, the record does not support a finding of general jurisdiction as there is no indication that Black Hawk carries "consistent and systematic activity" in T & T beyond the engagement of Maritime for the repair of its vessel.

Nevertheless, Court finds that T & T's exercise of specific jurisdiction over Black Hawk was constitutionally sound. According to the First Circuit, this determination rests on "three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998) (internal quotations and citations omitted). Because Maritime's lengthy exposition on this point is accurate, and because Black Hawk has not raised any counterargument, there is no need to spill much ink here. There is no dispute that Black Hawk chose to repair its vessel in T & T. Moreover, it is also uncontested that the parties' contract contained a choice-of-law clause selecting T & T as the proper forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (the existence of a valid forum-selection clause functions as a party's consent to the exercise of personal jurisdiction by the court in the chosen forum). Thus, Maritime has shown that an adequate link exists between Black Hawk's activities in T & T and its subsequent collection action for purposes of specific jurisdiction. See Donatelli, 893 F.2d at 462. For these reasons, the Court finds that the T & T courts had personal and subject-matter jurisdiction over Black Hawk.

### ii. Impartiality

■ Maritime argues that T & T courts are impartial and gave Black Hawk a fair shake. In support of this contention, Maritime points to a U.S. Department of State document regarding the "Investment Climate" in T & T, which states that "[T & T's] judicial system upholds the sanctity of contracts and generally provides a level playing field for foreign investors involved in court matters."[4] Black Hawk responds that this is irrelevant because it has "noth-

3. The Court further observes that if a party chooses to serve a defendant by an "alternative method"—that is, some method other than personal service—the plaintiff must submit an affidavit showing that "the person intended to be served was able to ascertain the contents of the documents" or that "he would have been able to do so." See Rule 5.10. The court "must immediately refer [such an affidavit] to a master or judge who must consider the evidence and endorse on the affidavit whether it satisfactorily provides service." Id. Further, "[i]f the court is not satisfied with the method of service the court office must fix a date, time and place to consider making an order under rule 5.12 and give at least 3 days['] notice to the claimant." Id. There is no indication that the T & T court ever issued such an order, and it would have been quite easy for Black Hawk to investigate this point. The inference, of course, is that the Tat court was satisfied with Maritime's service of process. And so is the Court.

4. The Court takes judicial notice of this official communication from the U.S. Dept. of State. See Fed. R. Evid. 201(b)(2). The same is available at the following hyperlink: http://www.state.gov/e/eb/rls/othr/ics/2015/241772.htm (as of April 14, 2016).

ing to do with enforcement or recognition of foreign judgments." Docket #35 at 9.

Black Hawk's argument is misplaced. The issue here is whether T & T courts treat foreigners in an impartial manner, not their stance on the execution or recognition of foreign judgments. Even setting this aside, Black Hawk's argument is tough to swallow. What better authority than the U.S. Department of State, expressly recognizing that T & T "provides a level playing field for foreign investors involved in court matters," is there on this point? Black Hawk cannot hope to defeat summary judgment without setting forth competent evidence refuting Maritime's submission. The Court therefore finds, as did the U.S. Department of State, that T & T's courts are generally recognized as impartial towards foreign litigants.

### iii. Competency of court, due process, absence of fraud, and considerations of public order and justice

■ In this analysis, the "competency" of a court refers to its power to adjudicate the matter upon which judgment was issued. See Efectos Litográficos v. Nat'l Paper & Type Co., 12 P.R. Offic. Trans. 486, 501, 112 D.P.R. 389 (1982) (citing Restatement (Second) of Conflict of Laws § 105 (1980)). This should be "measured against the rules of the foreign nation." Id. On this point, Maritime submitted Section 20 of the Supreme Court of Judicature Act, which confers T & T courts with authority to adjudicate matters such as actions for the collection of monies. See Docket # 1–8. The Court is therefore satisfied that the T & T courts had authority to issue the judgment Maritime seeks to execute here.

■ Further, Black Hawk offers no reason to doubt that the T & T court complied with the due process of law, and that it issued a judgment untainted by fraud. See Docket No. 29 at ¶ 8–15. As noted above, Black Hawk was properly served with pro-

cess, and the T & T court issued a judgment on Black Hawk's default. None of this is disputed. Also, Black Hawk has not put forth any reason from which to deduce that the judgment at issue was either contrary to public order, or to basic principles of justice. The lawsuit in this case involves a simple collection action on a debt incurred by a corporation, which is routine fodder for courts in any developed nation.

For these reasons, the Court finds that Maritime has established all the requirements for the *exequatur* of the T & T judgment in Puerto Rico. Judgment shall be entered accordingly.

### b. Whether Rosalie Tarbox is personally liable for the judgment issued against Black Hawk.

■ Aside from the *exequatur*, Maritime requests a declaratory judgment holding co-defendant Rosalie Tarbox personally liable for Black Hawk's debt. The parties agree that the judgment at issue here cannot reach Tarbox since she was not a party to the action in T & T. They also agree that Florida law imposes personal liability on a corporate officer for any obligations incurred on behalf of an "administratively dissolved" corporation.

Maritime argues that Tarbox is liable because, at the time Black Hawk entered into the contract for maintenance services on its vessel, it had been "administratively dissolved" as a corporation by the State of Florida for failure to render its annual corporate reports. Tarbox counters that Florida law terminates such liability "upon the ratification of such action by the corporation's board of directors or shareholders subsequent to the reinstatement of the corporation... ." See Fla. Sta. Ann. § 607.1421(4).

Here, the record indeed shows that the Florida Department of State reinstated Black Hawk as a corporation in good standing under Florida law. See Docket

# 11–1. The record further shows that, through a corporate resolution issued after the date of reinstatement, Black Hawk ratified without reservation the actions taken by Tarbox relating to the repair of the vessel. Her liability was thus terminated as of that date. Maritime's request must therefore be denied.[5]

### c. Conclusion

For the reasons stated above, Maritime's motion for summary judgment is **GRANTED** on its request for the *exequatur* of the judgment obtained in T & T, and **DENIED** on the request for a declaratory judgment seeking to hold co-defendant Tarbox personally liable for the debt incurred by Black Hawk.

**IT IS SO ORDERED.**

---

5.  Tarbox originally raised this issue in her motion to dismiss. In response, Maritime stated that Tarbox had requested an extension of time to answer the complaint for the sole purpose of giving her enough time to reinstate Black Hawk as a valid corporation and issue the corresponding corporate resolution absolving her of personal liability. Consequently, Maritime complained that Tarbox was playing "fast and loose" with the Court. The docket appears to support Maritime's contention, as the motion for extension of time predates Black Hawk's reinstatement and its corporate resolution. Nevertheless, the law is clear. Florida reinstated Black Hawk as a corporation in good standing, and Black Hawk subsequently absolved Tarbox of personal liability. Maritime does not provide any authority to support the proposition that either the reinstatement or the corporate resolution are invalid under these circumstances, and consequently that Tarbox would still be liable for Black Hawk's debt.