UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Chase Bailey, Individually,
        Plaintiff/Counter-Defendant

        v.

Lynn Buskey, Shawn McCarthy,          Case No. 12-cv-396-SM
and Buskey & McCarthy, LLP,           Opinion No. 2015 DNH 103
        Defendants/Counter-Claimants/
        Third-Party Plaintiffs

        v.

Michael E. Chubrich, and
Michael E. Chubrich, P.A.,
        Third-Party Defendants,


**O R D E R**


     This litigation arises out of a somewhat complicated

insurance premium financing transaction gone wrong.  Plaintiff,

Chase Bailey, seeks damages from defendants (his former attorneys

and their law firm), asserting that they provided him with

negligent legal advice and representation.  In response,

defendants advance two counterclaims against Bailey: breach of

contract and quantum meruit, both of which arise out of Bailey's

alleged failure to pay legal fees defendants say they are owed.

Additionally, defendants advance a third-party claim against

Bailey's successor legal counsel, Michael Chubrich, and his law

firm.  Defendants assert that, to the extent they are found

liable on Bailey's negligence/malpractice claims, Chubrich and his law firm are liable to them for contribution.

The third-party defendant, Attorney Chubrich, moves for summary judgment on the sole claim advanced against him - that is, his alleged liability under New Hampshire's contribution statute.  For the reasons discussed, that motion is denied.

## Standard of Review

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  See also Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly

probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(c). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, speculation, and unsupported conclusions. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997). See also Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**Background**

The relevant factual background has been set forth at length in the parties' memoranda and this court's prior order. It need not be detailed again. It is sufficient to note that in 2008,

Bailey retained defendants, Lynn Buskey, Shawn McCarthy, and their law firm (collectively, "B&M"), to create a life insurance trust, for which they then acted as trustees. That trust subsequently acquired a $20 million life insurance policy from AIG. In 2009, a replacement policy was sought from Security Life of Denver (also known as "ING"), with premiums to be financed through the sale of bonds, which would be issued by the trust. The new financing closed on January 28, 2010. As part of that transaction, Bailey agreed to act as guarantor and was obligated to provide $1.7 million in collateral to Compass Bank. In turn, Compass Bank was obligated to issue a letter of credit. Things did not, however, go according to plan. Bailey refused to provide the required collateral to Compass Bank.

Instead, approximately one week after the closing, Bailey contacted Attorney Michael Chubrich to review the entire transaction. That initial meeting lasted about an hour. Bailey explained to Chubrich that he had been informed by his insurance agent that the collateral he was to provide to Compass Bank would be available for him to use as he saw fit and that the purchase of the life insurance policy would not cost him anything out of pocket. While he did not need a $20 million life insurance policy, Bailey said he agreed to proceed with the transaction

4

because he thought he would recognize some sort of financial benefit from it.

Bailey also explained that he needed access to (and use of) the money in his investment account to address a number of personal financial issues and could not afford to pay $1.7 million to Compass Bank. Accordingly, he asked Chubrich whether he could transfer a substantial sum of money (perhaps the entire $1.7 million) to a bank in France. Part of B&M's claim that Chubrich acted negligently includes the assertion that Chubrich advised Bailey on that issue before familiarizing himself with the complexities of the financing transaction and Bailey's obligations under it. Because Chubrich's advice to Bailey on that issue is central to B&M's contribution claim, it is, perhaps, best to quote directly from Chubrich's deposition testimony. Chubrich testified that:

> My best recollection was that [I advised Bailey that] he should not purchase any real estate in France; that as long as the money would be safe, not subject to any currency restrictions or whatever else, that he could transfer it when he received it to France, but it should be protected, kept liquid, because it sounded like he was in the middle of a difficult situation and that it would be expensive to get out.

Deposition of Michael Chubrich (document no. 77-3) at 14. Bailey testified in a similar manner, stating that Chubrich advised him that he could transfer the money out of the country, as long as

5

it remained safe and liquid.  <u>See</u> Deposition of Chase Bailey (document no. 77-4) at 82-83.  Plainly, then, as early as one week after the closing, Bailey was considering breaching his financial obligations to Compass Bank.

Eventually (the precise timing is unclear), Bailey decided not to provide the required capital to Compass Bank and asked Chubrich to take the steps necessary to "unwind" the transaction. Chubrich began by filing suit in New Hampshire state court, seeking to rescind the life insurance policy on grounds that Bailey agreed to purchase it in reliance upon fraudulent statements made by his insurance agent, James Archibald.  And, as part of his efforts to understand the complex premium financing transaction in which Bailey was involved, Chubrich sought advice from another attorney, as well as an insurance expert.  <u>See</u> Chubrich deposition at 21-22 and 24-26.

In September of 2010, after Bailey refused to provide the $1.7 million as collateral to Compass Bank, the bank sued him in Alabama.  Attorney Chubrich assisted Bailey in obtaining counsel to represent him in that litigation.  And, subsequently, Bailey retained new counsel in New Hampshire to replace Chubrich, due to the complexity of the multiple suits in which he was involved. Ultimately, the litigation with Compass Bank was resolved in

6

arbitration, and Bailey was ordered to pay the bank approximately $2 million.

In this action, Bailey seeks to recover damages from B&M saying, in essence, that but for their negligence and poor legal advice to him, he would have never entered into the transaction with ING and Compass Bank. B&M, in turn, seek contribution from Attorney Chubrich for at least a portion of any damages for which they might ultimately be found liable.

**Discussion**

I.    The Nature of B&M's Claim.

B&M seek contribution from Chubrich on grounds that his negligent advice to Bailey proximately caused Bailey to default on his obligations to Compass Bank, resulting in additional and unforeseeable damages, unrelated to any advice given or action taken by B&M. According to B&M:

> As a result of Chubrich's negligent advice and his breach of the duties he owed Bailey, Bailey transferred the money offshore which caused Bailey to default on his obligations to Compass Bank. Bailey admits that this led to Compass Bank filing the action against him in Alabama, which was transferred to arbitration, and settled for $2 million.
>
> Under Bailey's allegations, Chubrich was a joint tortfeasor in causing Bailey's alleged damages. The only damages Bailey claims he actually suffered are as a result of not posting the $1.7 million to the Compass account. . . . Bailey believes that he entered into a

7

> bad deal and Buskey & McCarthy should have warned him. <u>However, Bailey's alleged damages as a result of entering the "bad deal" were also caused by Chubrich's negligent advice regarding the completion of the transaction</u>.

Defendants' Memorandum (document no. 81) at 3-4 (emphasis supplied). In other words, B&M assert that if they are liable to Bailey for failing to counsel him <u>against</u> entering the transaction with Compass Bank, Chubrich is also liable for failing to advise him to <u>complete</u> that transaction. <u>See</u> <u>Id.</u> at 4 ("If Buskey & McCarthy are found liable to Bailey with regard to his signing the transaction documents on January 28, 2010, then Chubrich is also liable for failing to advise Bailey to transfer the $1.7 million to Compass Bank to fulfill Bailey's obligations to complete the transaction.").

It is, to be sure, an unusual theory of recovery. Nevertheless, it has some logical appeal. B&M seem to assert that once Bailey committed to the financing transaction by signing the closing documents on January 28, 2010, his best (or least costly) option was to comply with his contractual obligations and provide the required security to Compass Bank. According to B&M, Chubrich malpracticed Bailey when he counseled Bailey to withhold payment to Compass Bank and, instead, set about attempting to "unwind" the transaction.

8

In support of their claim that Chubrich acted negligently, B&M assert that Chubrich lacked the requisite knowledge and professional skill to properly advise Bailey about complex insurance premium financing transactions, and failed to understand the intricacies of this particular transaction. Additionally, they point out that while Chubrich did consult with outside experts, he did so only well <u>after</u> he had already advised Bailey he could "unwind" the transaction. And, say B&M, that advice was based upon the legally incorrect assumption that Bailey could simply rescind the life insurance policy on grounds that it was obtained through fraud. He could not. Because the trust, not Bailey, was the holder of the insurance policy, only the trust could rescind the policy (which the trustees refused to do). According to B&M, Chubrich committed malpractice by, among other things, basing his legal advice and strategy on that critical misunderstanding. And, say B&M, by wasting time on that flawed strategy rather than advising Bailey to honor his obligations to Compass Bank, Chubrich prompted the bank to sue Bailey, thereby independently causing at least a part of the damages for which Bailey now seeks recovery.

In short, B&M seem to claim that once Bailey signed the closing documents and became obligated to provide the collateral to Compass Bank, a properly informed and appropriately

9

knowledgeable attorney of reasonable skill would have advised Bailey to honor his contractual obligations. By counseling Bailey to do otherwise, say B&M, Chubrich acted negligently and provided unsound legal advice that proximately caused Bailey to incur a greater financial loss than he otherwise would have incurred. B&M seek contribution from Chubrich for that (alleged) additional loss.

## II.   Governing State Law.

New Hampshire law provides that "a right of contribution exists between or among 2 or more persons who are jointly and severally liable upon the same indivisible claim, or otherwise liable for the same injury, death or harm."  N.H. Rev. Stat. Ann. ("RSA") 507:7-f I.  Here, as noted, B&M assert that at least a portion of the damages Bailey claims to have suffered were proximately caused by Attorney Chubrich's legal malpractice. Accordingly, B&M seek contribution from Chubrich for those damages.

To demonstrate that Attorney Chubrich acted negligently in advising Bailey (i.e., committed malpractice), B&M must establish that: (1) an attorney-client relationship existed between Chubrich and Bailey - a relationship that would impose upon Chubrich a duty to exercise reasonable professional care, skill,

and knowledge in providing legal services to Bailey; (2) Chubrich breached that duty of care; and (3) Bailey suffered damages that were proximately caused by that breach. See Wong v. Ekberg, 148 N.H. 369, 373 (2002). Determining whether an attorney-client relationship existed is a question of law for the court to resolve, but determining whether an attorney breached his or her professional duties to the client is a factual question for the jury to resolve. See, e.g., Furbush v. McKittrick, 149 N.H. 426, 432 (2003) ("Though the existence of the defendant's duty to the plaintiff is a question of law, it is for the fact-finder to determine whether, under the circumstances of the case, the defendant breached his duty to exercise reasonable professional care and that the defendant's breach caused the plaintiff's harm.") (citations omitted). Moreover, "while summary judgment may be appropriate if the evidence of negligence is so conclusive that reasonable persons can reach but one conclusion, such instances are exceedingly rare." Id. at 432-33 (citations and internal punctuation omitted). This is not one of those rare cases.

While no one denies that there was an attorney-client relationship between Bailey and Chubrich, the parties very much dispute whether Chubrich breached any professional obligations he owed to Bailey. B&M and Chubrich have submitted lengthy

11

arguments concerning the scope and nature of the professional duties Chubrich owed to Bailey, and whether or not he breached those duties.

As evidence of Attorney Chubrich's alleged negligence, B&M's expert opines that he: had "no experience with complicated premium financing transactions and did not have adequate time or the capacity to review the documents and understand the consequences of Mr. Bailey's default;" (2) mistakenly believed Bailey could rescind the policy and thereby unwind the transaction; (3) failed to "grasp even the basics of the transaction or the consequences of Mr. Bailey's failure to provide the required collateral;" and, nevertheless, (4) "advised Mr. Bailey not to provide the collateral [to Compass Bank] and advised Compass in writing of that decision," which prompted Compass to sue Bailey in Alabama. Supplemental Expert Report (document no. 81-14). That expert opinion evidence, likely admissible at trial, is sufficient to create a genuine dispute of material fact which defeats summary judgment. The trier-of-fact, not the court, will have to resolve that dispute. Consequently, at least at this juncture, the court cannot conclude that Attorney Chubrich is entitled to judgment as a matter of law with respect to B&M's contribution claim.

12

Parenthetically, the court notes that it is entirely unclear whether Bailey is even entitled to recover the "additional" damages he says he incurred as a result of his refusal to provide the required capital to Compass Bank (that is, the measure of damages he says he incurred beyond the damages he would have incurred had he simply complied with his contractual obligations to Compass Bank - likely the difference between the arrangement crafted by B&M and the arrangement Bailey claims should have been crafted). But, B&M never advised him to breach those obligations to Compass Bank; in fact, they counseled him to honor them. Consequently, it is difficult to imagine how those additional damages flowing from Bailey's breach might have been foreseeable, or how B&M could be liable for them (though, of course, the parties have not yet briefed that issue). And, if B&M are not liable for those additional damages, their contribution claim against Chubrich likely evaporates (Chubrich is not directly liable to Bailey for those additional damages because Bailey has not advanced any claims against Chubrich).

But, because the measure of Bailey's recoverable damages is not currently before the court, B&M's contribution claim against Chubrich must (at least for the time being) remain.

## Conclusion

For the foregoing reasons, Attorney Chubrich's motion for summary judgment (document no. 77) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 19, 2015

cc: Scott M. Fogg, Esq.
Sean T. O'Connell, Esq.
Robert A. McCall, Esq.
Scarlett M. Rajbanshi, Esq.
Lawrence J. Kenney, Jr., Esq.
Tierney M. Chadwick, Esq.

14