# United States Court of Appeals
## For the First Circuit

No. 20-1135

VINCENT E. STUART,

Plaintiff, Appellant,

v.

CITY OF FRAMINGHAM, MASSACHUSETTS, f/k/a Town of Framingham; and
BRIAN SIMONEAU, Assistant to the Chief of Police of the City of
Framingham,

Defendant, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Benjamin J. Wish, with whom Seth J. Robbins and Todd & Weld,
LLP, were on brief, for appellant.
John J. Cloherty III, with whom Pierce, Davis & Perritano,
LLP, was on brief, for appellees.

February 24, 2021

**LYNCH**, **Circuit Judge**.   The district court granted summary judgment in favor of defendants City of Framingham and Brian Simoneau in this lawsuit brought by former Framingham police officer Vincent Stuart raising Garcetti speech retaliation and Massachusetts Whistleblower Act claims.  See Garcetti v. Ceballos, 547 U.S. 410 (2006); Mass. Gen. Laws ch. 149, § 185(b)(1).  Because the undisputed facts demonstrate that defendants have met their burden to show that the adverse employment decisions would have occurred whether or not Stuart engaged in protected speech, we affirm the district court's entry of summary judgment.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)("Mt. Healthy"); Cf. Garcetti, 547 U.S. at 417-18.

I.

A full recitation of the facts and issues in this case can be found in the district court's January 22, 2020, memorandum and order.  Stuart v. City of Framingham, No. 1:16-cv-12559-IT, 2020 WL 360552, at *1-5 (D. Mass. Jan. 22, 2020).  In brief, Stuart was a police officer in the Framingham Police Department ("FPD") from July 2000 until the termination of his employment on February 22, 2017.  Id. at *1, *4.  In 2014 he was promoted to lieutenant and served as a shift commander and as the commanding officer of the Framingham Weapons Training Unit.  Id. at *1.  Stuart was then

a member of the Executive Board of the Framingham Police Superior Officers Association -- a police union.  Id.

Between 2015 and 2017, Stuart made two unrelated complaints against other members of the FPD.  The first was in 2015, when Stuart brought a complaint against Brian Simoneau, who was a civilian "Assistant to the Chief."  Id. at *1-2.  Stuart stated that Simoneau had performed non-civilian police functions, including motor vehicle stops and responding to police calls.  Stuart's union also submitted a letter, which stated that Simoneau's behavior "open[ed] members of the Superior Officers Union to tremendous liability issues."  Id. at *2.  In response, Chief Kenneth Ferguson prohibited Simoneau from acting as a "Special Officer."  Simoneau also participated in weapons training.[1]  Id.

Separately, Stuart in 2016 filed a complaint against Lieutenant Robert Downing.  Stuart had a long-running dispute with

---

[1]    In 2015, the FPD changed its policy to require shift commanders to personally book arrestees who arrived during their shift.  Stuart states that because he booked just 7% of the arrestees who arrived while he was on duty, other shift commanders called this change the "Stuart policy" and resented the additional work it entailed.  Stuart, 2020 WL 360552, at *2.  FPD also investigated Stuart's possible misuse of his flexible leave time.  Id.  In a settlement regarding the flexible leave investigation, Stuart attested that these actions were not retaliation for his complaint against Simoneau.  The district court accordingly did not treat them as adverse employment actions, and Stuart does not make any argument on appeal that this settlement is not binding here.  Id.

Downing. Their relationship had deteriorated rapidly between 2008 and 2009, while Downing was President of the Framingham Girls Softball League. As President, Downing "left Stuart's daughter off the [team] draft roster." Stuart and Downing's relationship never recovered. Stuart told Chief Ferguson in May 2016, for example, that "Downing is running around trying to screw me and my daughter." In April 2016, Stuart discovered that Downing was involved in an investigation into Stuart's daughter, who was a suspect in an assault and battery. On May 3, 2016, Stuart emailed himself a copy of the investigation report relating to his daughter.

On May 26, 2016, Stuart submitted his complaint against Downing to Framingham's human resources director. Stuart alleged that Downing had committed fraud, larceny, and other crimes, along with violations of FPD's internal policies. He claimed that Downing's "CTS -- Less Lethal Impact Munitions" instructor certification had expired in 2006, but Downing nonetheless continued to teach "Less Lethal Impact Munitions" courses and to certify on his overtime reports that he was a qualified instructor. Stuart also contacted Chief Ferguson and asked that Simoneau not be involved in any investigation of his complaint. Id. at *3.

On August 8, 2016, Deputy Chief Ronald Brandolini sent Stuart a Notice of Investigation, which stated, "your submission of [the Downing complaint] may . . . constitute conduct unbecoming

a Framingham Police Lieutenant and violate Department Rule 10.2 which prohibits the act of knowingly entering or causing to be entered . . . a police report or police record [containing] any inaccurate, false, or improper information." FPD placed Stuart on paid administrative leave effective that day. That paid administrative leave lasted through February 22, 2017, after the investigation had been completed and after there was a further hearing on charges stemming from the investigation. Id. at *3-4. During the investigation, Brandolini interviewed individuals within the department and at the company that provided FPD with less lethal weapons training. On September 30, 2016 he submitted a 354-page report detailing his findings.[2] Brandolini concluded that Stuart had been untruthful in his complaint against Downing. He listed numerous false or misleading statements in Stuart's submission, including that "[Brandolini] specifically asked [Stuart] to compile 'instructor certificates for the past five years,'" that Stuart reviewed the certifications for all instructors, that he was able to get certificates for every instructor except Downing, that CTS training representative Dan Miller told Stuart the CTS certification records were highly

---

[2]    Simoneau assisted in preparing the Brandolini report, but the parties dispute the extent of his involvement. Stuart claims that Simoneau "drafted much of the substance of th[e] report" while defendants claim that Simoneau merely formatted the report and helped to compile documents.

accurate through 2009, that Miller told Stuart that Downing did not attend the 2011 instructor training, and that Miller only confirmed Downing's 2002 instructor certification and not certifications for other years. Brandolini explained in his report that he began to investigate Stuart almost immediately after he saw the Downing complaint. He "quickly determined [the complaint] was not accurate" by checking Downing's "Less Lethal Impact Munitions" certification records in FPD's internal computer system and confirming with FPD's payroll coordinator that Downing had not claimed overtime for work as a Less Lethal Impact Munitions instructor on at least thirty-one of the thirty-six dates that Stuart alleged in his complaint. Brandolini was also aware of the longstanding issues between Stuart and Downing. Brandolini states, "anyone with knowledge of the Stuart-Downing relationship" would "conclude[] that Stuart harbors substantial hatred towards Downing."

After receipt of Brandolini's investigative report, the City appointed an outside independent hearing officer to hear the allegations against Stuart. See Mass. Gen. Laws ch. 31, § 41. It selected John Collins, an attorney who is not an employee of the City. On January 31, 2017, Collins conducted the disciplinary hearing. At the hearing Collins heard witnesses and received exhibits. Brandolini testified on behalf of the City, and Stuart called two witnesses: Lieutenant Stephen Cronin and Stuart's union

president, Sergeant Scott Brown.[3] Collins also "repeatedly invited" both sides to call Stuart as a witness, but Stuart chose not to testify. Stuart and the City were represented by counsel. Both lawyers examined witnesses and presented argument.

On February 16, 2017, Collins issued a twenty-eight-page report detailing his findings from the hearing and recommending that FPD fire Stuart. Collins found that the evidence presented at the hearing corroborated the findings in the Brandolini report as to Stuart's violations. He also found that Stuart had not substantiated his assertions in defense. Collins concluded that Stuart violated the Department's rules concerning competence, filing false reports, truthfulness, and conduct unbecoming of an officer. Consistent with FPD's policy that officers who engaged in dishonest conduct must be fired, Collins recommended that each of the violations of FPD's policies regarding filing false reports and untruthfulness "requir[ed] termination" of Stuart's employment. He stated that in light of the obligation imposed on

---

[3] Stuart now complains that he was not permitted to question witnesses about Simoneau's involvement in FPD's investigation into Stuart. Collins made clear that he limited that line of questioning because it was not relevant to the disciplinary issue before him. He explained in his report, "[Stuart's] well-prepared and articulate counsel often strenuously urged me to focus on other areas, and some of these may become relevant in another forum, [but] my assignment was limited to determining whether there was just cause to discipline Lt. Stuart based on charges that resulted from [Brandolini's] investigation."

law enforcement officers by the <u>Brady</u> and <u>Giglio</u>[4] doctrines, Stuart was "unable to perform essential job duties including testifying credibly in court or in other forums." Collins also recommended that Stuart's violation of FPD's rule concerning conduct unbecoming of an officer, on its own, warranted a "moderate period of suspension" between "30 [and] 60 day[s]," and his violation of the rule concerning incompetence warranted a 30-day suspension. Stuart has presented no evidence that Collins was ever aware of the Simoneau complaint, and Stuart does not allege that he was. Stuart did not appeal from the hearing determination to the Civil Service Commission, as he was entitled to do. Mass. Gen. Laws ch. 31, §§ 41, 43.

On February 22, 2017, then Acting Chief Steven Trask (who replaced Chief Ferguson while Ferguson was on medical leave, beginning November 16, 2016) accepted Collins' recommendation and terminated Stuart's employment.[5] <u>Stuart</u>, 2020 WL 360552, at *4.

---

[4] <u>See</u> <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83, 86 (1963) (prosecutors must disclose exculpatory evidence to a criminal defendant); <u>Giglio</u> v. <u>United States</u>, 405 U.S. 150, 154 (1972) (prosecutors must disclose information weighing on the credibility of a key witness to a criminal defendant).

[5] Stuart claims that Simoneau had some role in the discussions about Stuart's termination. He states that Simoneau "sent or received thirteen emails with City Counsel and/or the FPD Administration, including Trask, concerning Stuart [between the time of the disciplinary hearing and Stuart's termination]." Stuart has failed to put any of these emails into evidence. He also states, "Simoneau further accepted an invitation from City

- 8 -

Trask issued Stuart a termination letter, which stated, "having thoroughly reviewed and carefully considered Hearing Officer Collins' findings, conclusions, and recommendations, I adopt and agree with them. . . . Therefore, for all the reasons set forth in [the Collins report], and after a thorough examination of the entire record in this matter, effective this date I am hereby discharging you from employment with the Framingham Police Department."

On December 20, 2016, Stuart brought this suit against the City of Framingham and Simoneau. He initially sued just to challenge his suspension with pay during FPD's investigation of the Downing complaint as retaliation in violation of the First Amendment and the Massachusetts Whistleblower Act. Stuart alleged that Simoneau improperly motivated the investigation into Stuart, delayed giving Stuart notice of the investigation, protected Downing from discipline, and removed favorable language from Brandolini's report.

After Trask terminated his employment Stuart amended his complaint to assert claims that the termination of his employment was in retaliation for his speech. Although Stuart alleged that Simoneau influenced Trask's decision to accept Collins' recommendation, he never produced any evidence to support that

Counsel to attend a meeting [about Stuart]," but he provides no details about the meeting.

- 9 -

allegation.  Cf. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000) (discriminatory statements by those "in a position to influence the decisionmaker" were sufficient to raise a triable question of pretext in an employment discrimination suit).  After extensive discovery the district court granted summary judgment for the defendants on both the First Amendment speech-retaliation and the Massachusetts Whistleblower Act claims.[6]  Stuart, 2020 WL 360552, at *1.  It found that a reasonable jury could conclude that Stuart's complaint against Simoneau was protected speech relating to a matter of public concern.  Id. at *5-6.  The court also found that Stuart's paid administrative leave and the termination of his employment were both adverse employment actions.  Id. at *6.  And it concluded that Stuart had not presented sufficient evidence of a causal relationship between the Simoneau complaint and Stuart's paid administrative leave and termination. Id. at *7-8.  The court stated, "a reasonable jury could not find that any protected speech was a substantial and motivating factor for the adverse employment actions."  Id. at *1.  It also found that in any event, "[d]efendants . . . 'met their burden to show that they would have taken the same adverse employment actions regardless of [Stuart's] . . . speech.'"  Id. at *7 (quoting

---

[6]     The court also granted summary judgment as to Stuart's contract law claims.  Stuart, 2020 WL 360552, at *8-9.  Stuart does not appeal from that portion of the decision.

McGunigle v. City of Quincy, 835 F.3d 192, 205 (1st Cir. 2016)). The district court held that Stuart's Massachusetts Whistleblower Act claim failed for the same reasons. Id. at *8.

Stuart brought this timely appeal, arguing there is a genuine material dispute over whether the Simoneau complaint was a substantial or motivating factor in FPD's decision to place Stuart on paid administrative lead and terminate Stuart.

II.

We review the district court's grant of summary judgment de novo. Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 29 (1st Cir. 2020). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGunigle, 835 F.3d at 202 (quoting Fed. R. Civ. P. 56(a)).

To prevail on a speech-retaliation claim the plaintiff must first show that his or her protected speech related to a "matter[] of public concern," Garcetti, 547 U.S. at 417, and was a "substantial or motivating factor" in the adverse employment consequence. McGunigle, 835 F.3d at 202 (quoting Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011)). If the plaintiff meets that test the burden shifts to the defendant to prove by a preponderance of evidence that "it would have reached the same decision . . . [regarding the adverse employment event] even in the absence of the protected conduct." Mt. Healthy, 429 U.S. at

- 11 -

287. "[T]he plaintiff may then 'discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor.'" Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 55 (1st Cir. 2014) (quoting Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000)).

The same standard applies to Stuart's Massachusetts Whistleblower Act claim. "[A] plaintiff's burden of proof under the [Massachusetts Whistleblower Act] closely parallels his burden for First Amendment discrimination under Mt. Healthy." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 303 (1st Cir. 2014); see also Antonellis v. Dep't of Elder Affs., 152 N.E.3d 798, 811 (Mass. App. Ct. 2020).

The issue on appeal is whether there is a triable question that Stuart's Simoneau complaint was a "substantial or motivating factor" in his suspension and termination.[7] As to the district court's ruling that the Collins hearing was an independent

---

[7] Stuart also argues that the district court was wrong to find that the investigation into Stuart over his use of flexible leave time and the changes to the FPD booking policy were not retaliation. But Stuart does not challenge, or even mention, the district court's finding that Stuart's flexible leave settlement barred any claim of that kind. See Stuart, 2020 WL 360552 at *2 n.2. Accordingly, Stuart has waived any argument challenging the district court's decision on that point. See Universal Ins. Co. v. Off. of Ins. Comm'r, 755 F.3d 34, 39 (1st Cir. 2014) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

basis for Stuart's firing, there is no claim made that the findings of untruthfulness were inaccurate.  And Stuart presents no evidence to challenge Collins' independence.[8]  Stuart's whole assertion is that the FPD applied differential standards to officers charged with dishonesty, and that other officers were less severely disciplined for similar conduct.  Because he has presented no evidence of any differential treatment of dishonesty by FPD, we affirm the district court's grant of summary judgment.

Stuart argues that the FPD inconsistently applied its "zero tolerance" policy to dishonesty, terminating him for conduct that had resulted in less severe discipline for other officers. This argument is meritless.  The other instances of discipline that Stuart points to concern employees who are not similarly situated.  Stuart focuses his similarly situated argument primarily on Downing.  Downing is not a comparator for at least three reasons:  First, there were no findings that any assertions against Downing raised issues under the Brady or Giglio doctrines. Further, there were no findings that Downing was untruthful. Third, the independent hearing officer's investigation showed it was Stuart who had been untruthful in his allegations against Downing.

---

[8]    At most Stuart argues Simoneau "personally selected" Collins as the hearing officer, but he has presented no evidence that this was true.

As to the other comparators, Stuart tacitly concedes that the district court correctly found that Matthew Gutwill was not similarly situated to him. He has waived any argument as to his two remaining comparators. He discusses them in a single paragraph, does not mention either by name, and relies entirely on two paragraphs in the defendants' response to plaintiff's revised statement of material facts as factual support for his claims. See Universal Ins. Co. v. Off. of Ins. Comm'r, 755 F.3d 34, 39 (1st Cir. 2014) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). In any event, his discussion of these comparators in his briefing to the district court was similarly sparse. On that record, the district court correctly concluded "there is insufficient evidence from which a jury could infer that any of the named comparators are similarly situated to Stuart." Stuart, 2020 WL 360552, at *7 n.4. We conclude that because the independent hearing officer's findings of untruthfulness required termination, Stuart plainly would have been subjected to the same discipline whether or not Simoneau influenced Trask in making the final termination decision.

Stuart's secondary challenge to the period of his paid administrative leave during the investigation of the Downing complaint also fails. Stuart does not dispute that Brandolini "quickly determined" that Stuart's complaint was inaccurate, or that it was Brandolini who made the decision to place Stuart on

paid administrative leave. Stuart also concedes that Simoneau was "not essential" to the investigation. Further, Brandolini had personal knowledge that some of Stuart's allegations against Downing were inaccurate. Brandolini testified that Stuart's dishonesty meant he would not be able to testify in criminal cases. There was no error in the district court's conclusion that FPD would have imposed the same discipline whether or not Stuart had ever made a complaint about Simoneau. Under the doctrines of Mt. Healthy and Garcetti, this conclusion was correct. Mt. Healthy, 429 U.S. at 287; Garcetti, 547 U.S. at 417-18; see also Pierce, 741 F.3d at 303.

### III.

The judgment of the district court is affirmed.