# United States Court of Appeals

## For the First Circuit

No. 20-1174

MATTHEW J. GUTWILL,

Plaintiff, Appellant,

v.

CITY OF FRAMINGHAM, MASSACHUSETTS, f/k/a Town of Framingham; and
KENNETH FERGUSON, Chief of Police of the City of Framingham,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Indira Talwani, U.S. District Judge]

Before

Lynch and Kayatta, Circuit Judges,
and McElroy,[*] District Judge.

Richard D. Grundy for appellant.
John J. Cloherty III, with whom Pierce, Davis & Perritano,
LLP, was on brief, for appellees.

April 16, 2021

---

[*] Of the District of Rhode Island, sitting by designation.

**LYNCH**, **Circuit Judge**.   The district court granted summary judgment in favor of defendants City of Framingham and Chief of the Framingham Police Department ("FPD"), Kenneth Ferguson, in this Garcetti speech-retaliation and Massachusetts Whistleblower Act lawsuit, brought by FPD detective Matthew Gutwill.   Gutwill v. City of Framingham, No. 1:16-CV-12191-IT, 2020 WL 360486, at *1 (D. Mass. Jan. 22, 2020); see also Garcetti v. Ceballos, 547 U.S. 410 (2006); Mass. Gen. Laws ch. 149, § 185(b)(1).   The allegedly retaliatory employment actions challenged in this appeal are Gutwill's five-day suspension (after an outside investigator and an outside hearing officer each concluded he was untruthful and in violation of FPD rules) and his being put on paid administrative leave during an investigation. He also asserts that the very appointment of the outside investigator was "an adverse employment action."

   We affirm the district court's grant of summary judgment.   The district court correctly held that the defendants have met their burden to show that the adverse employment decisions would have occurred regardless of Gutwill's protected speech.[1]  See

---

[1]     Some of the individuals in this case were involved in this court's decision in Stuart v. City of Framingham, 989 F.3d 29 (1st Cir. 2021).

   The district court also granted summary judgment in a third case against FPD alleging Garcetti speech-retaliation and Massachusetts Whistleblower Act claims, along with other causes of action.   Among other things, Deputy Chief Kevin Slattery alleged

Stuart v. City of Framingham, 989 F.3d 29, 31 (1st Cir. 2021) (first citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) ("Mt. Healthy"); then citing Garcetti, 547 U.S. at 417-18).

I.

The key events in this convoluted story go first to an outside investigator's conclusion that the actions said to be related to protected speech were undertaken for reasons unrelated to protected speech, and second to the similar conclusions reached by a later independent hearing officer.

Plaintiff Matthew Gutwill joined the FPD in 2004 as a patrol officer and was promoted to detective in the narcotics division shortly afterwards. Gutwill, 2020 WL 360486, at *1. From 2008 to 2016 he served as one of two Task Force Officers who were assigned to work with the federal Drug Enforcement Administration ("DEA"). The other was Sergeant Scott Brown.

On September 29, 2015, Gutwill filed a complaint against his fellow officer Joseph Godino, alleging that Godino had given false testimony at a suppression hearing, and had been untruthful to prosecutors in that case. FPD concluded that Gutwill had "good

---

that his involuntary resignation from the FPD was retaliation for a complaint he made against Gutwill's former partner on the DEA taskforce, Scott Brown. Slattery v. Town of Framingham, No. 17-CV-11187-IT, 2020 WL 6566553, at *1 (D. Mass. Nov. 9, 2020).

cause" to make that complaint, but that the allegations were ultimately unsubstantiated.

In January, 2016, Gutwill learned that FPD intended to rotate him out of the DEA taskforce position. FPD also made other policy changes that affected Gutwill's overtime and privileges he previously enjoyed in the narcotics department.

On February 4, 2016 Gutwill complained to the head of the narcotics department, Sean Riley, about the FPD policy changes. Riley states that Gutwill told him: (1) "You know me, Sean. I leave places in shambles;" (2) that he (Gutwill) was "[l]ike a tornado" and; (3) that he would turn the department "[u]pside down." Gutwill recalls telling Riley that his dispute with the FPD would lead to "a trail of destruction where nobody wins." Gutwill also told Riley to expect outside agencies to begin an investigation into the narcotics department.

On February 5, 2016, Gutwill called Chief Ferguson. Chief Ferguson recounts two different categories of statements that led to the investigation of Gutwill. The first category was Gutwill's threat that he would "turn the place upside down" or "blow the place up" or "something to that effect." The second category was that Gutwill revealed confidential information he obtained from federal agents about Deputy Chief Brandolini. Gutwill claimed federal agents had recorded Brandolini on a wiretap as part of a drug investigation. Chief Ferguson took notes about

- 4 -

the conversation directly after the call and prepared a written summary of those notes. The notes and the summary were conveyed to both the independent investigator and the hearing officer.

Gutwill denies making the specific statements that Chief Ferguson recorded in his notes, but concedes he made similar comments. Gutwill testified, "I did not say 'turn the place upside down.' I did not say 'blow the place up.' But I did say something to that effect." He says he told Chief Ferguson that he had "been through this before; it leaves a wake of destruction."[2] Gutwill and Chief Ferguson agree that during the call Gutwill told Chief Ferguson that he felt Deputy Chief Slattery was retaliating against him by contacting Special Agent Ferguson at the DEA about Gutwill's pending removal from the DEA task force. Gutwill and Chief Ferguson also agree that Gutwill told Chief Ferguson that he had reported his concerns to the FBI. This is the basis for the claim that the FPD retaliated against him for his protected speech. Gutwill also accused Chief Ferguson and the administration of retaliating against him.

A. City appoints Julie Moore to be an independent investigator.

Chief Ferguson reported the February 5th call to Framingham Human Resources Director Dolores Hamilton, who decided

---

[2] Gutwill states that he was involved in an employment dispute with his prior employer, the Ashland Police Department, and he was referring to that experience here.

to appoint an outside investigator. Deputy Chiefs Slattery and Brandolini also submitted cross-complaints against Gutwill. Framingham then retained Julie Moore to investigate Gutwill's claims against FPD.[3]

Moore is a lawyer who works at a private legal and human resources consulting firm specializing in employment matters. "The bulk" of her work consists of internal investigations on behalf of an employer or a law firm. She stated she has conducted investigations at a wide variety of employers, including public entities, nonprofits, "tiny six-employee companies," and "Fortune 50 companies." Moore also consults with employers to prepare employee handbooks and training materials. Moore has represented employees in severance agreements and before the Massachusetts Commission Against Discrimination and the New Hampshire Commission for Human Rights. Moore also provides non-litigation advice and counsel to employers. She has served as an expert witness on workplace practices on behalf of both employees and employers. She estimated that at the time of the Gutwill case she had performed somewhere between 100 and 200 internal investigations

---

[3] Moore later discussed conducting a further investigation of Godino.

Moore was also later retained by the City to investigate a complaint by Gutwill's former partner, Brown, against Slattery. In that case Moore concluded that Brown's allegations were substantiated and Slattery was disciplined. Slattery, 2020 WL 6566553, at *5.

during the course of her career, including several investigations involving municipalities and police departments.

Moore's retention letter, dated February 23, 2016, and addressed to Chief Ferguson and HR Director Hamilton, stated "[t]his [letter] will confirm that you, on behalf of the Town of Framingham . . . have retained me to conduct an investigation into concerns expressed by Detective Matthew J. Gutwill. He has claimed that the Police Department engaged in retaliation when it advised him that he would be rotated off the DEA Taskforce and placed him back in the Detective's Bureau shortly after he complained that Detective Joseph Godin[o] testified untruthfully in a trial."

Moore began her investigation immediately after she was retained. She interviewed Chief Ferguson that same day, and met with Gutwill and his counsel one week later. Moore met with Gutwill six times between March 1, 2016 and May 17, 2016. She also interviewed Chief Ferguson six times between February 23, 2016 and May 9, 2016. In total, Moore interviewed thirteen witnesses and conducted thirty-four interviews.

The initial focus of Moore's investigation was Gutwill's claim that the FPD was retaliating against him for his complaints against Godino. On March 2, 2016, after Moore had already interviewed Chief Ferguson and Gutwill, FPD announced they intended to investigate whether Gutwill had committed misconduct during his February 5th call with Chief Ferguson. FPD issued a

Notice of Investigation to Gutwill informing him of that fact. HR Director Hamilton and Moore agreed that Moore would investigate those complaints as well. That investigation is one of the complained of employment actions in this suit.

Moore separately and sequentially considered each of the issues she was retained to investigate. She first prepared a final report on Gutwill's retaliation claim. Moore then turned to the first category of statements that Chief Ferguson asserted Gutwill made during the February 5th call and issued a separate report. She then turned to the second category of comments that Chief Ferguson alleged that Gutwill made on that call and issued a third report. Moore also discussed with HR Director Hamilton investigating other issues relating to the Godino and Gutwill complaints but did not do so.

### a. Moore's first report.

Moore issued three separate reports. On July 15, 2016, Moore produced a 179-page report addressing Gutwill's retaliation claims against the department. Moore concluded that FPD had a legitimate, non-discriminatory reason for each action asserted by Gutwill to be retaliatory. Moore's conclusions in that report are not at issue in this litigation.

### b. Moore's second report.

On August 15, 2016 Moore produced a second report, which concluded that Chief Ferguson's account of the February 5, 2016

conversation was credible, and that Gutwill had not been truthful by denying that he told Chief Ferguson he would "turn the place upside down" or "blow the place up." Immediately after Moore's second report FPD placed Gutwill on paid administrative leave pending the completion of the investigation. That leave is another of the complained of employment actions in this suit.

### c. Moore's third report.

On September 15, 2016 Moore produced a third report, which concluded that:

> Detective Matthew Gutwill violated polices of the [FPD] relevant to appropriate workplace behavior, including telling the truth, in two respects: (1) by making the comment to [Chief Ferguson] on February 5 about Brandolini being "on a wire" and failing to be honest and forthcoming in this investigation with regard to what he said;[] and (2) by failing to be honest in this investigation about having disclosed to Brandolini several years ago that his name had come up on a [federal narcotics] wire[tap].

Moore did not recommend any specific discipline.

On December 12, 2016, Chief Ferguson suspended Gutwill for five days without pay for violations of FPD Rules and Regulations 4.7, Truthfulness, and 1.02, Conduct Unbecoming a Police Officer, based on Moore's findings of dishonesty. Rule 4.7 states, "[e]mployees shall speak the truth at all times when on duty or when discussing a matter arising out of or related to the officers [sic] duties or the operation, organization or business

of the department." Rule 1.02 states, "[e]mployees shall not commit any specific act or acts of improper, unlawful, disorderly, or intemperate conduct, whether on or off duty, which reflect(s) discredit or reflect(s) unfavorably upon the officer, upon other employees[,] or upon the police department." That five-day suspension is also a subject of this suit. Gutwill returned to work in the patrol division after his suspension.

B. Conclusions of the Independent Hearing Officer Steven Torres.

Gutwill protested his suspension. Framingham then appointed attorney Steven A. Torres, a lawyer in private practice in Framingham, to conduct a hearing to review Gutwill's five-day suspension and paid leave. Torres heard testimony from witnesses and allowed counsel for Gutwill and the City to present argument. After the hearing he issued a 10-page report, concluding "[d]etective Gutwill made both of the disputed statements to Chief Ferguson in the February 5, 2016 phone conversation . . . [and] [d]etective Gutwill denied making those statements while testifying before the Town's appointed investigator." Torres found that this was a violation of FPD Rules and Regulations 4.7, Truthfulness, and Rule 1.02, Conduct Unbecoming a Police Officer that would have justified "a penalty as severe as termination." At the hearing, Chief Ferguson and independent investigator Moore

- 10 -

testified.  Torres gave Gutwill the opportunity to testify, but Gutwill elected not to do so.

Gutwill appealed Torres's decision to the Massachusetts civil service board but later withdrew his appeal and proceeded with his federal lawsuit.[4]

## II.

On October 28, 2016, before FPD had reached any final decision as to his discipline, Gutwill brought this suit in Massachusetts federal district court.  The district court granted summary judgment in favor of the defendants in a carefully reasoned decision on January 22, 2020.  Gutwill, 2020 WL 360486 at *1.  It found that a reasonable jury could find that Gutwill had engaged in protected speech in his complaints against Godino.  Id. at *8. The court further stated that a reasonable jury could find that his paid administrative leave and five-day unpaid suspension were adverse employment actions.  Id. at *8-9.  The court also found that there was a jury question as to whether the internal investigation was an adverse employment action.  Id. at *9.[5]  The district court concluded, "[d]efendants have carried their burden

---

[4]     Gutwill never amended his original complaint to include allegations about his suspension, but both parties took discovery about the suspension, and the district court allowed Gutwill to proceed with those claims at summary judgment.

[5]     Gutwill does not claim that his transfer to the patrol division was an adverse employment action.

- 11 -

of showing they would have suspended Gutwill for [his] conduct even if he had not engaged in protected speech." Id. at *10. Even crediting Gutwill's version of his February 5th conversation with Chief Ferguson, the district court found "Gutwill has not proffered evidence from which a jury could discount Chief Ferguson's understanding that Gutwill made threatening comments." Id. The district court granted summary judgment on the Massachusetts Whistleblower Act claims for the same reasons. Id. at *11.

### III.

"We review an order for summary judgment de novo, evaluating the facts and all reasonable inferences therefrom in the light most flattering to the nonmoving party." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013).

A plaintiff in a speech-retaliation claim must demonstrate two elements: (1) that the plaintiff's speech "related to a 'matter[] of public concern,'" Stuart, 989 F.3d at 35 (quoting Garcetti, 547 U.S. at 417); and (2) that the protected speech "was a 'substantial or motivating factor' in [an] adverse employment consequence," id. (quoting McGunigle v. City of Quincy, 835 F.3d 192, 202 (1st Cir. 2016) (alteration in original)). For purposes of speech retaliation an "adverse employment consequence" includes an action the employer takes that would "deter 'a reasonably hardy individual[]' from exercising his constitutional rights." Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (quoting Agosto-de-

Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217 (1st Cir. 1989) (en banc) (alteration in original)).

A prima facie showing on these elements shifts the burden to the defendant to prove that "it would have reached the same decision . . . [regarding the adverse employment event] even in the absence of the protected conduct." Stuart, 989 F.3d at 35 (quoting Mt. Healthy, 429 U.S. at 287 (alteration in original)). The plaintiff may rebut defendant's Mt. Healthy defense with evidence that it is in fact more likely than not that discrimination was a substantial or motivating factor in the adverse employment outcome. Id. (citing Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 55 (1st Cir. 2014)); see also Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000).

The standard is the same for claims under the Massachusetts Whistleblower Act. Id. (first citing Pierce v. Cotuit Fire Dist., 741 F.3d 295, 303 (1st Cir. 2014); then citing Antonellis v. Dep't of Elder Affs., 152 N.E.3d 798, 811 (Mass. App. Ct. 2020)).

The issues Gutwill raises on appeal are whether the district court erred in concluding that he had not shown pretext in his claims that FPD retaliated by: (1) appointing an independent investigator to investigate Gutwill's complaint and Chief Ferguson's allegations about the February 5th call; (2) placing Gutwill on paid administrative leave after Moore concluded that

Gutwill, during Moore's investigation, had violated the department's policies on honesty; or (3) suspending Gutwill without pay for five days for violating the department's policy against dishonesty.[6] Gutwill further argues that the district court erred in relying on Mt. Healthy because the independent investigator Moore was not truly independent from the FPD.[7] Gutwill's brief spends little time on the hearing officer Torres, but suggests that his conclusions were derivative of Moore's. None of these arguments have merit.

As the district court found, Gutwill fails to raise any dispute of material fact as to whether Ferguson's initial decision to report the February 5th conversation to Human Resources Director Hamilton was retaliation for Gutwill's complaint against Godino. Crediting Gutwill's account of the conversation, Chief Ferguson had good cause to report the call. Gutwill denies making the

_____

[6] Gutwill has waived any argument that the staffing changes he complained about in his February 5th oral complaint were retaliation. See Universal Ins. Co. v. Off. of Ins. Comm'r, 755 F.3d 34, 39 (1st Cir. 2014) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

[7] Gutwill also takes issue with the trial judge's language in holding him to a showing that the protected conduct was "the" substantial or motivating factor in the adverse employment actions, instead of "a" factor. While this was likely a slip of the pen at the conclusion of an otherwise thorough decision, the correct language was used every other place the standard was recited in its decision. We have reviewed the decision carefully and are convinced the trial judge applied the correct legal standard. Gutwill's claim to the contrary is without merit.

specific comments that Chief Ferguson alleges he made, but he concedes he said "something to that effect." As the district court cogently noted, Gutwill admitted he told Chief Ferguson he would leave a "wake of destruction." Gutwill, 2020 WL 360486, at *10. Chief Ferguson also knew that days earlier Gutwill had made similar comments to Riley. These statements plainly raise a question as to whether Gutwill had violated FPD Rule 1.02, Conduct Unbecoming a Police Officer. There was no error in the district court's conclusion that "[d]efendants have 'met their burden to show that they would have taken the same adverse employment actions regardless of [Gutwill's] . . . speech.'" Id. (quoting McGunigle, 835 F.3d at 205).

As to his remaining challenges, Gutwill fails to rebut Framingham's showing that Gutwill would have been disciplined whether or not he engaged in protected speech. Independent hearing officer Torres' conclusion that Gutwill violated FPD Rules 4.7 and 1.02 is an adequate, non-retaliatory basis for Gutwill's discipline. Gutwill has presented no developed argument that the defendants' reliance on the Torres report does not satisfy the Mt. Healthy requirements.

Moreover, the Moore investigation is a second independent grounds for Gutwill's paid leave and suspension. Moore found that Gutwill was untruthful during his interviews with her. Moore's finding that Gutwill was dishonest during her

- 15 -

<u>investigation</u> provides a basis for FPD to have disciplined Gutwill "even in the absence of the protected conduct." <u>Mt. Healthy</u>, 429 U.S. at 287.

Gutwill argues in response that Moore was not truly independent from the FPD. He says Moore lacked independence because (1) she was paid $176,000 to investigate the Gutwill matters; (2) she communicated frequently with Chief Ferguson and Hamilton throughout the investigation and shared interim results and impressions with Hamilton; and (3) FPD was able to direct her investigation by prioritizing which investigations Moore conducted first, and which were conduct internally. These arguments fail to raise a material issue of fact. Merely receiving a standard fee for the investigation, discussing the status of the investigation, and taking direction from a client about how to prioritize multiple, overlapping investigations does not support an inference of lack of independence.

We add that Gutwill has provided no evidence that the conclusion in the outside investigator's report and the hearing officer's findings do not have an adequate factual basis. As to the allegations against Gutwill, Moore found that Chief Ferguson's recollection of the February 5th call was supported by his near-contemporaneous notes and Riley's recollection of a similar conversation with Gutwill the day before.

Under Mt. Healthy and Garcetti, the defendants have met their burden to prove an independent non-retaliatory basis for Gutwill's discipline because they would have taken these actions anyway and Gutwill has provided no evidence of pretext.[8]  Mt. Healthy, 429 U.S. at 287; Garcetti, 547 U.S. at 417-18.  For the same reasons, Gutwill's Massachusetts Whistleblower Act claims fail.  Pierce, 741 F.3d at 303.

IV.

The judgment of the district court is affirmed.

---

[8]  The district court stated:  "Gutwill has failed to 'discredit the proffered [non-retaliatory] reason . . .' [for his discipline] by developing evidence of relevant comparators or of the department's inconsistent use of investigations that rebuts Defendants' stated intent for initiating investigations." Gutwill, 2020 WL 360486, at *10 (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 133 (1st Cir. 2005) (alterations in original)).  In this appeal Gutwill again fails to present any evidence of disparate treatment of similarly situated comparators, or other evidence of pretext.